## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ) | Chapter 11 |
| In re: ) | |
| ) | Case No. 06-11045 (BLS) |
| GLOBAL POWER EQUIPMENT GROUP ) | Jointly Administered |
| INC., *et al.*, ) | |
| ) | |
| Debtors. ) | |
| ) | |

### NOTICE OF APPEAL

PLEASE TAKE NOTICE that SNC-Lavalin Power Ontario, Inc., a creditor and party-in-interest in the above-captioned chapter 11 cases, hereby appeals to the United States District Court for the District of Delaware from the United States Bankruptcy Court's *Order Confirming the First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and its Affiliated Debtors* entered on December 21, 2007 (D.I. 2233).

The names of all parties to the judgment, order, or decree appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

| Party | Counsel |
|---|---|
| **Global Power Equipment Group, Inc.** **Deltak, L.L.C.** **("Debtors')** | WHITE & CASE LLP John K. Cunningham Frank L. Eaton Matthew C. Brown Wachovia Financial Center 200 South Biscayne Boulevard, 49th Floor Miami, FL 33131 (305) 379-2700 |

and

THE BAYARD FIRM
Jeffrey M. Schlerf
Eric M. Sutty
Mary E. Augustine
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
(302) 655-5000

**Official Committee of Unsecured Creditors**

SCHULTE ROTH & ZABEL LLP
Jeffrey S. Sabin
David M. Hillman
919 Third Avenue
New York, NY  10022
(212) 756-2000

and

LANDIS RATH & COBB LLP
Adam G. Landis
John H. Strock
919 Market Street
Suite 600
Wilmington, DE 19801
(302) 467-4400

**Official Committee of Equity Security Holders**

BROWN RUDNICK BERLACK ISRAELS LLP
Steven D. Pohl
One Financial Center
Boston, MA  02111
(617) 856-8200

And

BROWN RUDNICK BERLACK ISRAELS LLP
Howard L. Siegel
City Place I
185 Asylum Street
Hartford, CT  06103

and

{B0710671; 1}

SAUL EWING LLP
Mark Minuti
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
(302) 421-6800

**Office of the U.S. Trustee**

David Michael Klauder
844 King Street
Suite 2207
Wilmington, DE 19801
(302) 573-6491

**Counsel to the Noteholders**

Robin E. Keller, Esq.
Lovells LLP
590 Madison Avenue
New York, NY  10022
(212) 909-0600

Mark E. Felger, Esq.
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
(302) 295-2087

Dated:  December 27, 2007
        Wilmington, Delaware

WILLIAM D. SULLIVAN, LLC

William D. Sullivan (No. 2820)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE  19801
(302) 428-8191

– and –

{B0710671; 1}

Patrick P. Dinardo
Paul E. Summit
Pamela Smith Holleman
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800

***Attorneys for Appellant SNC-Lavalin
Power Ontario, Inc.***

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- 0 8 - 0 2 5 -

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GLOBAL POWER EQUIPMENT GROUP INC., et al., | ) | Case No. 06-11045 (BLS) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 1911 |

### ORDER CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR GLOBAL POWER EQUIPMENT GROUP INC. AND ITS AFFILIATED DEBTORS

On September 28, 2006 (the "Petition Date"), Global Power Equipment Group Inc.

("GPEG"), Global Power Professional Services, L.L.C., Braden Manufacturing, L.L.C., Braden

Construction Services, Inc., Deltak Construction Services, Inc., Deltak, L.L.C., Williams

Industrial Services Group, L.L.C., Williams Industrial Services, LLC, Williams Specialty

Services, LLC, Williams Plant Services, LLC, and WSServices, LP (collectively, the "Debtors"),

each filed in the United States Bankruptcy Court for the District of Delaware (the "Court") a

voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101, et seq. (the "Bankruptcy Code").

On October 10, 2006 and November 9, 2006, respectively, the United States Trustee (the

"U.S. Trustee") appointed in these chapter 11 cases the Official Committee of Unsecured

Creditors (the "Creditors' Committee") and the Official Committee of Equity Security Holders

(the "Equity Committee," and collectively with the Creditors' Committee, the "Committees").

On September 10, 2007, the Debtors filed their Joint Chapter 11 Plan of Reorganization

for Global Power Equipment Group Inc. and Its Affiliated Debtors [Docket No. 1637] and the

Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors [Docket No. 1638].

On October 31, 2007, the Debtors filed their First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors (the "Plan") [Docket No. 1911][1] and the Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors (the "Disclosure Statement") [Docket No. 1912].

On October 31, 2007, the Court entered the Order (i) Approving the Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors; (ii) Approving (a) Form of Ballots and Proposed Solicitation and Tabulation Procedures for the Plan and (b) the Subscription Forms for Purposes of the Rights Offering and Private Placement; (iii) Approving the Solicitation Packages and Prescribing the Form and Manner of Notice of Distribution Thereof; (iv) Establishing Procedures for (a) Voting in Connection with the Plan Confirmation Process and (b) Temporary Allowance of Claims Related Thereto; and (v) Scheduling a Hearing on Plan Confirmation (the "Disclosure Statement Order") [Docket No. 1913].

The Disclosure Statement Order, among other things, (i) established December 13, 2007 at 4:00 p.m. (Prevailing Eastern Time) as the deadline for voting on the Plan, (ii) established December 13, 2007 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for holders of GPEG Equity Interests to submit Subscription Forms electing to participate in the Rights Offering and/or Private Placement, and (iii) scheduled a hearing commencing on December 20, 2007 at

---

1    Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Plan.

1:00 p.m. (Prevailing Eastern Time) to consider confirmation of the Plan and objections thereto (the "Confirmation Hearing").

On November 9, 2007, the Debtors' noticing, claims and balloting agent, AlixPartners, LLP ("AlixPartners"), and the Debtors' solicitation, balloting, tabulation, and subscription agent, Financial Balloting Group LLC ("FBG," and together with AlixPartners, the "Solicitation Agents"), transmitted solicitation packages in accordance with the Disclosure Statement Order, as attested to in the Affidavit of Service of AlixPartners, LLC of Solicitation Packages on Creditors (the "Creditor Solicitation Affidavit") [Docket No. 2164] and the Affidavit of Service of Financial Balloting Group LLC of Solicitation Packages on Holders of Common Stock (the "Equity Solicitation Affidavit," and together with the Creditor Solicitation Affidavit, the "Solicitation Affidavits") [Docket No. 2156].

Objections to confirmation of the Plan were filed by ACE American Insurance Company, Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company and possibly other members of the ACE group of companies (collectively, "ACE") [Docket No. 2162], the U.S. Trustee [Docket No. 2169], the Tennessee Department of Revenue ("TDOR") [Docket No. 2173], SNC-Lavalin Power Ontario, Inc. [Docket Nos. 2185 and 2209], Minnesota Self-Insurers' Security Fund ("SISF") [Docket No. 2190], and Maasvlakte Energie BV ("Maasvlakte") [Docket No. 2191] (collectively, the "Objections"). TDOR withdrew its objection on December 19, 2007 [Docket No. 2214].

On December 18, 2007, the Debtors filed the Certification of David Hartie with Respect to the Tabulation of Votes on the First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors (the "Equity Voting Certification") [Docket No. 2201]. On December 19, 2007, the Debtors filed the Certification of

John Franks with Respect to the Tabulation of Votes on the First Amended Joint Chapter 11 Plan

of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors [Docket

No. 2210] (the "Creditor Voting Certification," and together with the Equity Voting

Certification, the "Voting Certifications").

On December 19, 2007, the Debtors also filed the Debtors' Memorandum of Law in (A)

Support of Confirmation of First Amended Joint Chapter 11 Plan of Reorganization for Global

Power Equipment Group Inc. and Its Affiliated Debtors and (B) Response to Certain Objections

Thereto (the "Confirmation Memorandum") [Docket No. 2213]. Further, on December 20,

2007, the Debtors filed the declarations of Candice Cheeseman, Robert M. Caruso and Henry S.

Hsu in support of the Plan (collectively, the "Declarations in Support of the Plan") [Docket Nos.

2218, 2219, and 2220, respectively].

Further, on December 19, 2007, the Debtors filed the Motion Pursuant to 11 U.S.C. §§

105(a) and 363(b) to Authorize the Debtors to Execute a Commitment Letter and Related

Documents and to Incur Obligations Thereunder in Connection with the Acquisition of Up to

$150 Million in Aggregate Principal Amount of Exit Financing (the "Exit Financing Motion")

[Docket No. 2216]. The Court entered an order approving the Exit Financing Motion on

December 21, 2007 [Docket No. 2229].

The Confirmation Hearing concluded on December 20, 2007.

NOW, THEREFORE, the Court having considered the Plan, the Solicitation Affidavits,

the Voting Certifications and Declarations in Support of the Plan, the Confirmation

Memorandum, the Objections, all evidence proffered or adduced and the arguments of counsel at

the Confirmation Hearing, and the entire record of these Chapter 11 Cases, and after due

deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following Findings of Fact and Conclusions of Law and hereby orders:[2]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Jurisdiction and Venue. This Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334. Venue before this Court was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(A), (L), and (O). The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.

B.    Burden of Proof. The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence, and, as set forth below, the Debtors have met that burden.

C.    Judicial Notice. This Court takes judicial notice of the docket in these Chapter 11 Cases maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

D.    The Record. The following record (the "Record") was established to support confirmation of the Plan:

(i)    All documents identified by the Debtors and the Committees at the Confirmation Hearing, including those identified on the Debtors' Exhibit

---

[2]    This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

List for Confirmation Hearing submitted to the Court at the Confirmation Hearing on December 20, 2007, including, without limitation, the Plan, the Disclosure Statement and all exhibits, schedules and attachments thereto and filed in connection therewith, and the Plan Documents (including the Deltak Plan Administrator Agreement, as amended), all of which were admitted into evidence without objection;

(ii)    The Declarations in Support of the Plan;

(iii)   The Solicitation Affidavits;

(iv)    The Voting Certifications;

(v)     The entire record of the hearing held by the Court on December 14, 2007 and December 17, 2007, in connection with (a) the Debtors' Objection to Proof of Claim No. 1100 Filed by SNC-Lavalin Power Ontario Inc., filed on August 29, 2007 [Docket No. 1579]; (b) the Debtors' Objection to Proof of Claim No. 1099 Filed by SNC-Lavalin Power Ontario Inc., filed on August 29, 2007 [Docket No. 1581]; (c) the Joint Motion of Estate Parties Pursuant to Bankruptcy Rule 3018 to Determine the Temporarily Allowed Amount of SNC-Lavalin Power Ontario, Inc, Claim No. 1099 for Plan Voting Purposes, filed on November 5, 2007 [Docket No. 1943]; (d) (I) Motion of SNC-Lavalin Power Ontario, Inc., Pursuant to Bankruptcy Rule 3018 to Temporarily Allow Its Claim No. 1099 for Plan Voting Purposes, and for Related Relief, and (II) Opposition to Joint Motion of Estate Parties Pursuant to Rule 3018, filed on November 23, 2007 [Docket No. 2068]; and (e) the Motion of SNC-Lavalin Power Ontario, Inc. Pursuant to 11 U.S.C. Section 502(c) to Temporarily Allow Its Claim No. 1100 for the Purpose of Assessing Feasibility of the First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors Pursuant to 11 U.S.C. § 1129(a)(11), and for Related Relief, filed on November 23, 2007 [Docket No. 2069] (the "SNC Claims Hearing"), including all documentary evidence admitted into the record, briefs and papers filed, and arguments of counsel in connection therewith, and the order of the Court entered in connection with the SNC Claims Hearing, all of which was incorporated into the Record at the Confirmation Hearing;

(vi)    The entire record of the hearing held by the Court on December 17, 2007 in connection with (a) the Debtors' Motion to Approve Stipulation with Maasvlakte Energie BV Pursuant to Bankruptcy Rule 3018(a) [Docket No. 2165], and (b) the Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreement By and Between Debtors and Maasvlakte Energie BV [Docket No. 2166] (the "Maasvlakte Hearing"), including all documentary evidence admitted into the record, briefs and papers filed, and arguments of counsel in connection therewith,

and the orders of the Court entered in connection with the Maasvlakte Hearing [Docket Nos. 2203 and 2204], all of which was incorporated into the Record at the Confirmation Hearing;

(vii)     The entire record of these Chapter 11 Cases and the docket maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases, as to all of which the Court took judicial notice at the Confirmation Hearing; and

(viii)    The statements and argument of counsel on the record at the Confirmation Hearing, and all papers and pleadings filed with the Court in support of, in opposition to, or otherwise in connection with, confirmation of the Plan.

The evidence that was admitted into the Record in support of confirmation of the Plan and all related matters demonstrates, by a clear preponderance of the evidence, that the Plan should be confirmed.

E.     Modifications to the Plan. The Debtors have made the following technical modifications to the Plan as set forth in this paragraph (the "Modifications"). Section 6.3 of the Plan is hereby replaced in its entirety to comply with section 1129(a)(9)(C) of the Bankruptcy Code as follows:

At the election of the Debtors, each holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in regular installments over a period ending not later that five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim or that is less favorable than the treatment provided to the most favored nonpriority Unsecured Claims under the Plan. The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long

as the Debtors are in compliance with this Section. So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this Section or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

Section 8.6 of the Plan is hereby modified to provide at the end of such section the following: "provided, however, that nothing in this section shall be construed to release any party from willful misconduct or gross negligence as determined by Final Order." The Plan as modified by this Order shall constitute the Plan. The Modifications comply with section 1127 of the Bankruptcy Code. As provided by section 1127(a) of the Bankruptcy Code, the Debtors were authorized to propose the Modifications, and the Plan satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code. As provided by section 1127(c) of the Bankruptcy Code, the Modifications comply with section 1125 of the Bankruptcy Code. The Modifications will have no material adverse impact on the treatment of any Claims or Equity Interests, and pursuant to section 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019 all acceptances of the Plan are deemed acceptances of the Plan as modified by this Order.

F.    Resolution of Objections. As presented at the Confirmation Hearing, the consensual resolutions of certain Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interest of the Debtors and their Estates and supported by the Record, and therefore should be approved. All Objections that were not resolved by agreement at the Confirmation Hearing should be overruled, or are otherwise disposed of, as set forth herein and on the record of the Confirmation Hearing.

G.    Solicitation and Notice. To obtain the requisite acceptance of the Plan, on or about November 9, 2007, the Debtors completed solicitation of acceptances and rejections of the Plan by distributing the Disclosure Statement and related materials to holders of Claims against

or Equity Interests in the Debtors classified in impaired classes entitled to vote under the Plan.

(i)       As evidenced by the Creditor Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted on November 9, 2007, to all known holders of Claims against the Debtors classified in impaired classes entitled to vote under the Plan: (a) a CD-ROM containing the Disclosure Statement and all schedules and exhibits thereto, including the Plan and Disclosure Statement Order; (b) a Notice of (A) Solicitation of Votes to Accept or Reject the First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors, (B) Hearing to Consider Plan Confirmation and (C) Deadline for Filing Objections to the Plan (the "Confirmation Hearing Notice"); (c) an applicable ballot, customized for each recipient; (d) voting instructions; (e) a letter from the Creditors' Committee; and (f) a postage prepaid return envelope (collectively, the "Creditor Solicitation Package").

(ii)      Specifically, the Creditor Solicitation Packages were distributed to holders of Claims in GPEG Debtor Class 2 – Secured Claims, GPEG Debtor Class 4 – Subordinated Note Claims, GPEG Debtor Class 5A – WARN Act (Individual) Claims, GPEG Debtor Class 5B – WARN Act (Putative Class) Claims, Williams Debtor Class 2 – Secured Claims, Braden Debtor Class 2 – Secured Claims, Braden Debtor Class 3 – Subordinated Note Guarantee Claims, Deltak Class 2 – Secured Claims, Deltak Class 3 – Subordinated Note Guarantee Claims, Deltak Class 4A – WARN Act (Individual) Claims, Deltak Class 4B – WARN Act (Putative Class) Claims, Deltak Class 5 – Unsecured Claims, Deltak Construction Class 2 – Secured Claims, and Deltak Construction Class 3 – Subordinated Note Guarantee Claims.

(iii)     In addition, as evidenced by the Creditor Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted the

Confirmation Hearing Notice on November 9, 2007 to all known holders of Claims against the Debtors classified in unimpaired classes under the Plan. Specifically, the Confirmation Hearing Notice was transmitted to holders of Claims in GPEG Debtor Class 1 – Priority Claims, GPEG Debtor Class 3 – Unsecured Claims, Williams Debtor Class 1 – Priority Claims, Williams Debtor Class 3 – Unsecured Claims, Braden Debtor Class 1 – Priority Claims, Braden Debtor Class 4 – Unsecured Claims, Deltak Class 1 – Priority Claims, Deltak Construction Class 1 – Priority Claims, and Deltak Construction Class 4 – Unsecured Claims.

      (iv)      Furthermore, as evidenced by the Creditor Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted on November 9, 2007 the Notice of (A) Hearing to Consider Confirmation of First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors and (B) Deadline for Filing Objections to the Plan, to other parties in interest who were not entitled to vote on the Plan.

      (v)      As evidenced by the Equity Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted Equity Solicitation Packages (defined below) on November 9, 2007 to the brokerage firms, banks, and agents (the "Nominees") identified on Exhibit "A" to the Equity Solicitation Affidavit, to enable the Nominees to distribute such Equity Solicitation Packages to beneficial owners of GPEG common stock (GPEG Debtor Class 6A – GPEG Equity Interests) as of November 6, 2007 (the "Record Date"). The Equity Solicitation Packages included: (a) a CD-ROM containing the Disclosure Statement and all schedules and exhibits thereto, including the Plan and Disclosure Statement Order; (b) the Confirmation Hearing Notice; (c) an applicable ballot; (d) voting instructions; (e) a letter from the Equity Committee; (f) an appropriate Subscription Form, depending on whether

10

the holder's shares were registered or held through a Nominee; and (g) a postage prepaid return envelope (collectively, the "Equity Solicitation Package," and together with the Creditor Solicitation Package, the "Solicitation Packages").

   (vi)  In addition, as evidenced by the Equity Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted to the parties appearing on Exhibit "I" to the Equity Solicitation Affidavit on November 9, 2007 copies of the Instructions to the Subscription Form for Private Placement Offering in Connection with the First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors, with the Subscription Form and Questionnaire attached thereto.

   (vii)  Finally, as evidenced by the Affidavit of Publication dated November 27, 2007 [Docket No. 2119], and in compliance with the requirements of the Disclosure Statement Order, the Debtors caused the Confirmation Hearing Notice to be published in The Wall Street Journal (National Edition), The New York Times (National Edition), and Tulsa World on November 20, 2007.

   (viii)  The Debtors complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable laws in connection with the solicitation of votes on the Plan and the provision of notice of the Confirmation Hearing and the December 13, 2007 deadline for filing and serving objections to confirmation and for voting on the Plan and all other relevant deadlines related to the Plan. As such, the notice provided was due and proper with respect to all matters relating to the solicitation of votes on, and the confirmation of, the Plan and satisfied the requirements of due process with respect to all creditors, equity holders and parties in interest who were provided actual or constructive notice.

H.    Voting. As evidenced by the Voting Certifications, each class of Claims and Equity Interests on a Debtor-by-Debtor basis either (i) voted to accept the Plan under section 1126 of the Bankruptcy Code and for purposes of section 1129(a)(8)(A) of the Bankruptcy Code or (ii) is not impaired as provided in section 1124 and 1129(a)(8)(B) of the Bankruptcy Code.

I.    Compromises and Settlements Under the Plan. All of the settlements and compromises contained in the Plan, including those compromises and settlements contained in Sections 2.1, 9.2 and 9.3 of the Plan, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

(i)    In settlement and compromise of certain existing and potential disputes regarding Intercompany Claims and related matters, the Plan treats (a) the GPEG Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the GPEG Debtors under the Plan, (b) the Williams Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Williams Debtors under the Plan, and (c) the Braden Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Braden Debtors under the Plan. Intercompany Claims and Administrative Claims between and among the Debtors (other than Deltak) are, solely for purposes of receiving Plan Distributions, deemed resolved as a result of this settlement and compromise. The grouping of the Debtors pursuant to Section 2.1 of the Plan for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Debtors is proper, and the terms and provisions of Article II of the Plan do not discriminate unfairly, and are fair and

equitable and within the bounds of reasonableness.

(ii)     As set forth in, among other places, Section 9.2 of the Plan, the Plan represents a compromise and settlement of (a) any and all Intercompany Claims by and between Deltak (and its Estate) and any other Debtor or Subsidiaries that are not Debtors, (b) allocation of administrative costs, expenses, DIP Claims and guaranty claims, and the value of any Assets of Deltak retained directly or indirectly by New GPEG under the Plan, including, without limitation, the Assets of Deltak's Specialty Boiler business segment, and (c) the value of Deltak's Equity Interests retained under the Plan pursuant to which, and upon the occurrence of the Effective Date, (1) any and all such Intercompany Claims by and between Deltak and any other Debtor as of the Effective Date shall be forever waived, discharged, released and enjoined (pursuant and subject to the terms of the Plan), and (2) the holders of Allowed Unsecured Claims against Deltak shall receive the treatment accorded such Claims pursuant to Section 5.4(f) of the Plan in complete satisfaction thereof. The probability that litigation of the issues related to the Deltak Settlement would improve the value available for distribution to holders of Allowed Unsecured Claims against Deltak is speculative. The litigation of the issues related to the Deltak Settlement would be exceedingly complex, expensive and time consuming and would threaten the stability of the Debtors' businesses and their ability to reorganize. The Deltak Settlement offers substantial benefits for creditors including, without limitation, substantial, timely recoveries and distributions on account of Allowed Unsecured Claims. The terms and provisions of the Plan that reflect the Deltak Settlement do not discriminate unfairly, and are fair and equitable and above the lowest point on the range of reasonableness.

(iii)    The Plan represents a settlement and compromise of Claims against the Debtors held by certain former employees under the Federal Worker Adjustment and Retraining

Notification Act, 29 U.S.C. §§ 2101, et seq. (the "WARN Act Settlements"). The terms and provisions of the Plan that reflect the WARN Act Settlements do not discriminate unfairly, and are fair and equitable and within the bounds of reasonableness.

     J.    Releases, Exculpations and Injunctions. The Plan provides for various releases, exculpations and injunctions pursuant to Sections 8.14, 8.15, 9.2, 11.4, 15.3, 18.6, 18.8, and 18.22 thereof. With regard to the releases contained in Section 8.15 of the Plan, each holder of a Claim against or Equity Interest in the Debtors who was entitled to vote to accept or reject the Plan was also given the opportunity to "opt out" of such releases by making a timely written election pursuant to such holder's ballot. To the extent any such holder of a Claim against or Equity Interest in the Debtors did not choose to "opt out" of the releases in Section 8.15 of the Plan, such releases are deemed to be consensual. Furthermore, the releases, exculpations and injunctions provided in the Plan (i) are within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtors, their Estates and their creditors, and are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; (iv) were approved by an overwhelming majority of holders of Claims against or Equity Interests in the Debtors; (v) are provided in exchange for substantial payments under the Plan to holders of Allowed Claims against and Equity Interests in the Debtors; and (vi) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

     K.    Securities Under the Plan. Pursuant to the Plan and the New GPEG Constituent Documents, and without further corporate or other action, the following Plan Securities were

authorized: (i) 300,000,000 shares of New Common Stock of New GPEG, par value $0.01 per share, (ii) five (5) year warrants to purchase shares of New Common Stock at an exercise price per share equal to the Pro Forma Stock Price (as defined in the Backstop Stock Purchase Agreement) with the value of such warrants to equal 5.5% of the Adjusted Aggregate Offering Amount (the "Consideration Warrants"); provided, however, that the Consideration Warrants will allow for the holders thereof to purchase shares of New Common Stock at an exercise price per share equal to the Pro Forma Stock Price with the value of such warrants to equal 6.5% of the Adjusted Aggregate Offering Amount if the Termination Date under the Backstop Stock Purchase Agreement is extended until February 28, 2008, and (iii) the right to purchase shares of New Common Stock pursuant to the Rights Offering at the Applicable Share Price for each share of New Common Stock that is issued to the holders of Allowed Equity Interests in GPEG pursuant to the Plan (the "Rights").

(i)     Each holder of a GPEG Equity Interest as of the Record Date had the opportunity to participate in the Rights Offering to the extent of the Rights received by such holder in accordance with the exchange of old GPEG common stock for New Common Stock and Rights provided for in Section 5.1(g) of the Plan. If the Subscription Agent for any reason did not timely receive from a given holder of Rights a duly completed Subscription Form and such holder's Subscription Purchase Price, such holder is deemed to have relinquished and waived its right to participate in the Rights Offering. To the extent the holders of the GPEG Equity Interests did not fully exercise the Rights by the Subscription Expiration Date, such unexercised Rights expired and the Backstop Investors will purchase the New Common Stock represented by such unexercised Rights pursuant to the Backstop Stock Purchase Agreement. All questions concerning the timeliness, viability, form, and eligibility of any exercise of Rights

have been determined by GPEG in good faith, consistent with the provisions of the Plan and the Backstop Stock Purchase Agreement, and such good faith determination is final and binding. GPEG used commercially reasonable efforts to give notice to any holder of a GPEG Equity Interest regarding any defect or irregularity in connection with any purported exercise of Rights by such holder and in good faith appropriately permitted any such defect or irregularity to be cured. Neither GPEG nor the Subscription Agent should incur any liability for failure to give such notification.

(ii)     The issuance, offer and sale of the New Common Stock of New GPEG pursuant to the Rights Offering is principally in exchange for Equity Interests in the Debtors, and thus pursuant to section 1145 of the Bankruptcy Code such issuance, offer and sale of the New Common Stock pursuant to the Rights Offering is exempt from registration under Section 5 of the Securities Act and any State or local law otherwise requiring registration.

(iii)    In addition to the Rights Offering, GPEG also offered New Common Stock pursuant to the Private Placement. Each holder of a GPEG Equity Interest as of the Voting Record Date that GPEG knew to be a holder of a GPEG Equity Interest and that GPEG reasonably believed was an "accredited investor" under Section 4(2) of the Securities Act and Regulation D promulgated thereunder had the opportunity, but not the obligation, to participate in the Private Placement. If, on or prior to the Subscription Expiration Date, the Subscription Agent did not receive from a given holder of a GPEG Equity Interest that GPEG reasonably believed was an "accredited investor" a duly completed Private Placement Subscription Form and questionnaire regarding such holder's status as an "accredited investor," or the Subscription Agent does not receive such holder's Private Placement Subscription Purchase Price on or before six (6) Business Days prior to the Effective Date, such holder is deemed or shall be deemed to

have relinquished its right to subscribe in the Private Placement. To the extent any holder of a GPEG Equity Interest who was eligible to participate in the Private Placement did not appropriately subscribe for such holder's Ratable Proportion of the Private Placement Amount in the Private Placement, the Backstop Investors will purchase the unsubscribed New Common Stock relating to the aggregate unsubscribed Private Placement Amount in addition to the Direct Purchase Shares pursuant to the Backstop Stock Purchase Agreement. The Direct Purchase Shares will be purchased by the Backstop Investors pursuant to the Backstop Stock Purchase Agreement at the Applicable Share Price.

(iv)    To the extent the holders of GPEG Equity Interests did not exercise all of their Rights in the Rights Offering and to the extent the Private Placement was not fully subscribed, the Backstop Investors are obligated under the Backstop Stock Purchase Agreement to purchase the shares of New Common Stock that would have been purchased had such unexercised Rights been exercised and the New Common Stock subject to the Private Placement been subscribed as well as the Direct Purchase Shares (the "Backstop New Common Stock"). As consideration for the Backstop Investors' obligations under the Backstop Stock Purchase Agreement, including the obligation to purchase the Backstop New Common Stock, the Backstop Stock Purchase Agreement requires GPEG to issue the Consideration Warrants to the Backstop Investors, which are exercisable into New Common Stock.

(v)    The offer and sale of each of (a) the Backstop New Common Stock, (b) the Direct Purchase Shares, (c) the Consideration Warrants, (d) any exercise of Consideration Warrants for New Common Stock and (e) the New Common Stock in the Private Placement, qualifies for the "private placement" exemption provided by Section 4(2) of the Securities Act. Each such offer and sale complies with the "safe harbor" provided by Regulation D under the

Securities Act and was made only to those holders of GPEG Equity Interests who are "accredited investors" (as such term is defined in Regulation D).

      L.     Exit Financing. In order to fund the Debtors' day-to-day business operations and provide liquidity to meet working capital requirements, as well as to help fund Plan Distributions, the Debtors shall be procuring exit financing in connection with their emergence from chapter 11. On December 6, 2007, Morgan Stanley Senior Funding Inc. ("Morgan Stanley") delivered a proposed commitment letter (as amended from time to time, the "Commitment Letter") to the Debtors. On December 17, 2007, the Debtors' Board of Directors approved the proposed financing. On December 19, 2007, the Debtors filed the Exit Financing Motion. The Exit Financing Motion was approved at the Confirmation Hearing and the Debtors executed the Commitment Letter on December 20, 2007. Pursuant to the Commitment Letter and subject to the conditions set forth therein, Morgan Stanley has agreed to provide up to $150 million in aggregate principal amount of exit financing (the "Exit Facility"). The Exit Facility will consist of (i) a $60,000,000 revolving letter of credit facility, including a $10,000,000 cash advance subfacility, and (ii) a $90,000,000 term loan. The documents arising in connection with the Exit Facility, including without limitation any credit agreements, purchase agreements, guaranty and collateral agreements, notes, instruments or otherwise (collectively the "Exit Facility Documents") are not Plan Documents. The Exit Facility will be secured by first priority security interests in substantially all of the assets of the New GPEG Entities and certain other subsidiaries of New GPEG, as more particularly described in the Commitment Letter. As a result, the entry into the Exit Facility is in the best interests of all parties in interest, including all creditors, equity holders and the Estates. In addition, the Debtors have provided sufficient and adequate notice of the Exit Facility, including any material modifications to the Exit Facility or

to the Commitment Letter with respect thereto, to all parties in interest, including without limitation, all creditors, equity holders, the Committees and the Backstop Investors. The financial accommodations being extended pursuant to the Exit Facility are being extended in good faith and for legitimate business purposes. The obligations to be incurred by the Debtors and the New GPEG Entities in connection with the Exit Facility Documents are new obligations, not arising on account of an antecedent debt, and are supported by reasonably equivalent value (most notably the proceeds of the Exit Facility). The consummation of the Exit Facility and execution of the Exit Facility Documents do not conflict with the terms of the Plan or this Order. Pending the execution of the Exit Facility Documents and the closing of the Exit Facility, the Backstop Investors reserve all of their rights under the Backstop Stock Purchase Agreement with respect to the Exit Facility.

      M.     Executory Contracts and Unexpired Leases.  The Debtors have exercised reasonable business judgment in determining whether to reject, assume or assume and assign each of their executory contracts and unexpired leases under the terms of the Plan and this Order. Each pre- or post-confirmation rejection, assumption or assumption and assignment of an executory contract or unexpired lease pursuant to Article XVI of the Plan will be legal, valid and binding upon the applicable Debtor or New GPEG Entity and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such rejection, assumption, or assumption and assignment had been effectuated pursuant to an appropriate order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. Each of the executory contracts and unexpired leases to be rejected, assumed or assumed and assigned is deemed to be an executory contract or an unexpired lease, as applicable.

      (i)     The Plan constitutes a motion to reject the executory contracts and

unexpired leases of the Debtors that are designated to be rejected as set forth on Schedule 3 of the Disclosure Statement and the "Schedule of Rejected Executory Contracts and Unexpired Leases" attached hereto as Exhibit "A" (collectively, the "Rejection Schedule"), or otherwise designated for rejection pursuant to Section 16.1 of the Plan. Each executory contract or unexpired lease to be rejected pursuant to the Plan is burdensome and the rejection thereof is in the best interests of the Estates.

(ii)     Except as otherwise provided in this Order or Section 16.1 of the Plan, the Plan also constitutes a motion to assume or assume and assign all of the Debtors' executory contracts and unexpired leases, including, but not limited to, those contracts (the "Assumed and Assigned Contracts") set forth on Disclosure Statement Schedule 4 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" attached hereto as Exhibit "B" (collectively, the "Assumption Schedule"). Except as otherwise provided in a separate order of the Court, any non-Debtor party to an Assumed and Assigned Contract was required to object to such assumption and assignment or to the cure amounts proposed by the Debtors in connection therewith by no later than ten (10) Business Days prior to the Confirmation Hearing. Upon the entry of this Order, (a) all of the requirements of sections 365(b) and (f) will have been satisfied with respect to each Assumed and Assigned Contract for which no timely objection was filed; (b) all rights to object to the assumption or assumption and assignment of any such Assumed and Assigned Contract will have been waived; (c) except as the Court may hereafter determine is necessary and appropriate to effect the purpose of the Bankruptcy Code and equity, all rights to object to the cure amounts with respect to any such Assumed and Assigned Contracts will have been waived; and (d) the assumption or assumption and assignment of such Assumed and Assigned Contracts will have been approved. Any

objections filed with respect to an Assumed and Assigned Contract will be resolved as set forth in Article XVI of the Plan.

N.     Standing.  The Debtors have satisfied section 1121 of the Bankruptcy Code in that the Debtors have standing to file a plan.  Furthermore, the Plan reflects the date it was filed with the Court and identifies the entities submitting it as Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

O.     The Plan Complies with the Bankruptcy Code (11 U.S.C. §§ 1129(a)(1)).  As set forth below and as demonstrated by the Record, the Plan complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules and applicable non-bankruptcy law relating to the confirmation of the Plan.  In particular, the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code.

P.     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).  The Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The Plan's classifications conform to the statute and separately classify claims based on valid business and legal reasons.  The Debtors' classification has a rational basis because it is based on the respective legal rights of each holder of a Claim against or Equity Interest in the applicable Debtor's Estate and was not proposed to create a consenting impaired class and, thereby, manipulate class voting.  Article III of the Plan designates classes of Claims and Equity Interests that require classification.

Q.     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  The Plan complies fully with the requirements of section 1123(a)(2) of the Bankruptcy Code.  Article IV of the Plan specifies which classes of Claims and Equity Interests are not impaired under the Plan.

R.     Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  The Plan complies fully

with the requirements of section 1123(a)(3) of the Bankruptcy Code. Article V of the Plan specifies the treatment of classes and interests under the Plan, including those which are impaired.

S.       No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan complies fully with the requirements of section 1123(a)(4) of the Bankruptcy Code. As reflected in the treatment set forth in Article V of the Plan, the treatment of each of the Claims and Equity Interests in each particular class is the same as the treatment of each of the other Claims or Equity Interests in such class; provided, however, to the extent any claimant received any better treatment than that described by the Plan for its class on the basis of the standards for compromise and settlement, the Court hereby finds that such better treatment does not need to be made available to other members of the class.

T.       Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan complies fully with the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan provides adequate means for implementation of the Plan through, among other things, the Exit Facility, implementation of the Deltak Settlement, implementation of the Rights Offering and Private Placement, and the re-vesting of the Debtors' assets in the New GPEG Entities.

U.       Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan complies fully with the requirements of section 1123(a)(6) of the Bankruptcy Code. As indicated in the definition of "New GPEG Constituent Documents," the charter documents of the Debtors, New GPEG and the New GPEG Entities include such provision required by section 1123(a)(6).

V.       Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan complies fully with the requirements of section 1123(a)(7) of the Bankruptcy Code. Section 8.7 of the Plan provides for the selection of the initial board of directors (or managers, as applicable)

of each Debtor. Under Sections 8.6 and 8.8 of the Plan, the current management and officers, respectively, of the Debtors will continue their service. Section 11.1 provides for the selection of the Deltak Plan Administrator. All of these provisions are consistent with the interests of creditors and equity security holders.

W.    Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the provisions of the Bankruptcy Code.

X.    Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Plan complies fully with the requirements of section 1129(a)(2) of the Bankruptcy Code. Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of title 11, including, specifically, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, the Plan Documents and all other matters considered by the Court in connection with the Chapter 11 Cases.

Y.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan complies fully with the requirements of section 1129(a)(3) of the Bankruptcy Code. Having examined the totality of the circumstances surrounding the Plan, the Court has determined that the Plan was proposed in good faith and not by any means forbidden by law. The Plan achieves the rehabilitative and reorganizational goals of the Bankruptcy Code by restructuring the Debtors' obligations and providing the means through which the Debtors may continue to operate as a viable enterprise. Attendant to this continued operation of the enterprise is the ability of the Debtors to preserve jobs and continue business operations. The Plan is the result of extensive arm's-length discussions, debate and/or negotiations among the Debtors and key stakeholders

and is overwhelmingly supported by the creditors, equity holders and other parties in interest in these Chapter 11 Cases. It is clear that the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code.

      Z.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). The Plan complies fully with the requirements of section 1129(a)(4) of the Bankruptcy Code. Section 6.2 of the Plan clearly provides that each Professional Person who holds or asserts a Fee Claim will be required to file with the Court, and serve upon all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. Failure to file and serve such notice timely and properly results in the Fee Claim being forever barred and discharged. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b) of the Plan will become an Allowed Administrative Claim only to the extent allowed by an order of this Court. Pursuant to Section 18.16 of the Plan, no award or reimbursement of attorneys' fees or related expenses or disbursements will be allowed on, or in connection with, any Claims, except as ordered by the Court. This Court previously approved interim application procedures under section 331 of the Bankruptcy Code, pursuant to which the Court authorized and approved the payment of certain fees and expenses of professionals retained in the Chapter 11 Cases. All such fees and expenses, as well as all other accrued fees and expenses of professionals through the Effective Date, remain subject to final review for reasonableness by the Court under applicable provisions of the Bankruptcy Code. The foregoing procedures for this Court's review and ultimate determination of fees and expenses paid satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.

      AA.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Plan complies fully with the requirements of section 1129(a)(5) of the Bankruptcy Code. Section 8.7(b) of the

Plan describes the process pursuant to which the members of the board of directors for New GPEG (the "Initial Board") will be determined. Section 8.6 of the Plan states that upon the occurrence of the Effective Date, the management, control and operation of each of the New GPEG Entities, will be the general responsibility of each such entity's then current board and management. Section 8.8 of the Plan provides that the current officers of each of the Debtors will continue in such positions after the Effective Date. The identification of the proposed officers and directors of the New GPEG Entities satisfies section 1129(a)(5) of the Bankruptcy Code.

   BB. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan complies fully with the requirements of section 1129(a)(6) of the Bankruptcy Code. Pursuant to Section 18.21, the Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Therefore, the provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable and thus satisfied.

   CC. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan complies fully with the requirements of section 1129(a)(7) of the Bankruptcy Code. As set forth fully in the Liquidation Analysis and by the evidence adduced in the Confirmation Hearing, the "best interests" test is satisfied as to all impaired classes of Claims and Equity Interests. Furthermore, a liquidation under chapter 7 as set forth in the Liquidation Analysis would profoundly and adversely affect the ultimate proceeds available for distribution to all holders of Allowed Claims in the Chapter 11 Cases. Moreover, the increased costs associated with a liquidation under chapter 7 would substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee. Additionally, consummation of the Plan is not likely to be

followed by liquidation or the need for further financial reorganization. In the context of the erosion of the asset values and the increased costs and delay associated with the administration of a chapter 7 case, confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a chapter 7 liquidation of the Debtors. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. Therefore, the "best interests" test is satisfied with respect to each of these classes.

DD.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)). The Plan complies fully with the requirements of section 1129(a)(8) of the Bankruptcy Code. Section 1129(a)(8) is satisfied with respect to the Claims and Equity Interests, as applicable, in GPEG Debtor Class 1 – Priority Claims, GPEG Debtor Class 3 – Unsecured Claims, GPEG Debtor Class 6B – Other GPEG Debtor Equity Interests, Williams Debtor Class 1 – Priority Claims, Williams Debtor Class 3 – Unsecured Claims, Williams Debtor Class 4 – Equity Interests, Braden Debtor Class 1 – Priority Claims, Braden Debtor Class 4 – Unsecured Claims, Braden Debtor Class 5 – Equity Interests, Deltak Class 1 – Priority Claims, Deltak Class 6 – Equity Interests, Deltak Construction Class 1 – Priority Claims, Deltak Construction Class 4 – Unsecured Claims, and Deltak Construction Class 5 – Equity Interests as such Claims and Equity Interests are not impaired under the Plan and are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. GPEG Debtor Class 2 – Secured Claims, GPEG Debtor Class 4 – Subordinated Note Claims, GPEG Debtor Class 5A – WARN Act (Individual) Claims, GPEG Debtor Class 5B – WARN Act (Putative Class) Claims, GPEG Debtor Class 6A – GPEG Equity Interests, Williams Debtor Class 2 – Secured Claims, Braden Debtor Class 2 – Secured Claims, Braden Debtor Class 3 – Subordinated Note Guarantee Claims, Deltak Class 2 –

Secured Claims, Deltak Class 3 – Subordinated Note Guarantee Claims,  Deltak Class 4A –
WARN Act (Individual) Claims, Deltak Class 4B – WARN Act (Putative Class) Claims, Deltak
Class 5 – Unsecured Claims, Deltak Construction Class 2 – Secured Claims, and Deltak
Construction Class 3 – Subordinated Note Guarantee Claims have each voted to accept the Plan
in accordance with section 1126(c) of the Bankruptcy Code.

     EE.    Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9)).
The Plan complies fully with the requirements of section 1129(a)(9) of the Bankruptcy Code.
Consistent with section 1129(a)(9)(A), on the Distribution Date, each holder of an Allowed
Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash
payment, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such
holder; provided, that such treatment shall not provide a return to such holder having a present
value as of the Effective Date in excess of such holder's Allowed Administrative Claim;
provided, further, that an Administrative Claim representing a liability incurred in the ordinary
course of business of the Debtors may be paid at the Debtors' election in the ordinary course of
business. In addition, the Plan provides that the DIP Claims will be Allowed Administrative
Claims on the Effective Date and will be paid in Cash in full on the Effective Date. On the
Effective Date, in accordance with the terms of the DIP Credit Agreement, any outstanding
letters of credit issued under the DIP Credit Agreement will be cash collateralized, replaced or
secured with letters of credit issued by the Exit Facility. As required by section 1129(a)(9)(B) of
the Bankruptcy Code, Sections 5.1(a), 5.2(a), 5.3(a), 5.4(a) and 5.5(a) of the Plan provide that,
pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of
each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and
retained, and such holder of an Allowed Priority Claim shall be paid on the Plan Distribution

Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date. Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section 6.3 of the Plan as modified by the Modifications provides that, at the election of the Debtors, each holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in regular installments over a period ending not later than five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim or that is less favorable than the treatment provided to the most favored nonpriority Unsecured Claims under the Plan. Section 6.3 of the Plan also provides for a permanent injunction in the Confirmation Order against any holders of a Tax Claim prohibiting them from commencing or continuing any actions against any responsible person or officer or director of the Debtors that otherwise would be liable to such holders for payment of such Tax Claim so long as no default has occurred with respect to such Tax Claim under Section 6.3. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

FF.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). The Plan complies fully with the requirements of section 1129(a)(10) of the Bankruptcy Code. For each of the Debtors, at least one class of impaired creditors accepted the Plan.

GG.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan complies fully with the requirements of section 1129(a)(11) of the Bankruptcy Code. Based on the Record before the Court, the Court concludes that the Debtors will have sufficient means to meet all of their

obligations under the Plan. The Record establishes that the reorganized Debtors will emerge from bankruptcy as a viable, financially healthy business enterprise, unlikely to be in need of further financial reorganization. Based on the foregoing findings and conclusions, the Plan satisfies the feasibility standard of section 1129(a)(11).

HH.    Payment of Fees (11 U.S.C. § 1129(a)(12)). The Plan complies fully with the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 18.1 of the Plan provides for the payment of all statutory fees by the Debtors on or before the Effective Date. The Plan accordingly satisfies section 1129(a)(12) of the Bankruptcy Code.

II.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Plan complies fully with the requirements of section 1129(a)(13) of the Bankruptcy Code. Pursuant to Section 18.14 of the Plan, on or after the Effective Date, all retiree benefits,[3] if any, will continue to be paid in accordance with applicable law. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

JJ.    Sections 1129(a)(14)-(16) of the Bankruptcy Code. Sections 1129(a)(14)-(16) are inapplicable as the Debtors (i) have no domestic support obligations (1129(a)(14)), (ii) are not individuals (1129(a)(15)), and (iii) are for-profit businesses (1129(a)(16)).

KK.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The Plan complies fully with the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

---

[3]    As defined in section 1114 of the Bankruptcy Code, "Retiree Benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependants, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under the Bankruptcy Code.

LL.    Satisfaction of Confirmation Requirements. The Plan satisfies all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

MM.    Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record in these Chapter 11 Cases, the Debtors, the Creditors' Committee and its members (in their capacity as such), the Equity Committee and its members (in their capacity as such), the Noteholders (in their capacity as such), the Backstop Investors (in their capacity as such) and each of their respective current or former officers, directors, members, employees, agents, representatives, advisors, and attorneys have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan.

NN.    Conditions Precedent to Confirmation. Upon entry of this Order, all conditions precedent to confirmation of the Plan contained in Section 14.1 of the Plan, if not waived pursuant to Section 14.3 of the Plan, shall be, and hereby are satisfied.

OO.    Plan Documents. The Plan Documents, as they may be amended as contemplated and permitted by the Plan, are, in the judgment of the parties, necessary and appropriate to effectuate the Plan and the Court so finds.

## ORDER

### Confirmation of the Plan

1.    Pursuant to section 1127 of the Bankruptcy Code, the Modifications are approved, and pursuant to section 1129 of the Bankruptcy Code, the Plan is hereby CONFIRMED. Each of the Objections to the Plan not otherwise withdrawn, resolved or otherwise disposed of (including

the resolutions and/or adjournments set forth in paragraph 57 of this Order), is OVERRULED

and denied. All withdrawn Objections are deemed withdrawn with prejudice.

      2.      The following are hereby incorporated by reference into and are an integral part

of this Order: (a) the Plan, (b) the exhibits to the Plan, and (c) the Plan Documents. The failure

to reference any particular Plan Document, or any provision of a Plan Document or the Plan in

this Order will have no effect on the Court's approval and authorization of, or the validity,

binding effect or enforceability of, the Plan and the Plan Documents in their entirety.

### Compromises and Settlements Under the Plan

      3.      The settlements and compromises set forth in the Plan, including, without

limitation, Articles II and IX of the Plan, are approved in all respects.

      4.      The grouping of the Debtors pursuant to Section 2.1 of the Plan for purposes of

voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims

against and Equity Interests in the Debtors is approved in its entirety.

      5.      The treatment of Intercompany Claims and Equity Interests provided in Sections

2.1 and 2.2 of the Plan is approved in its entirety.

      6.      The treatment of Intercompany Claims and Equity Interests provided in Section

9.2(a) of the Plan (the Deltak Settlement) is approved in its entirety.

      7.      The WARN Act Settlements set forth in Section 9.3 of the Plan are approved in

their entirety.

### Classification and Treatment

      8.      All Claims and Equity Interests shall be, and hereby are, classified and treated as

set forth in the Plan. The Plan's classification scheme shall be, and hereby is, approved.

      9.      The treatment of all Claims and Equity Interests as provided in the Plan and the

Plan Documents shall be, and hereby is, approved.

## Administrative Claims

10.    A holder of an Administrative Claim, other than (a) the DIP Claims, (b) a Fee Claim, (c) a liability incurred and payable in the ordinary course of business by a Debtor (and not disputed), (d) an Administrative Claim of the Backstop Investors, or (e) an Administrative Claim that has been Allowed on or before the Effective Date must file with the Court and serve on the Debtors, any official committee appointed in the Chapter 11 Cases and the Office of the United States Trustee, notice of such Administrative Claim within forty (40) days after service of Notice of Confirmation. Such notice must include at a minimum (a) the name of the Debtor(s) which are purported to be liable for the Claim, (b) the name of the holder of the Claim, (c) the amount of the Claim, and (d) the basis of the Claim. **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

11.    An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 6.2(a) of the Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days after the later of (a) the Effective Date, or (b) the date of service of the applicable notice of Administrative Claim complying with the requirements of this Order and the Plan, or such later date as may be approved by the Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 30-day period (or any extension thereof), such Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

12.    Each Professional Person or Person entitled to assert a Fee Claim and who holds or asserts such Fee Claim shall be, and hereby is, required to file with the Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.** Parties who fail to file an application for

approval of fees on a timely basis may not seek Court approval of any fees or expenses recovered for the benefit of the Estate. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b) of the Plan shall become an Allowed Administrative Claim only to the extent allowed by order of this Court.

## Enforceability of Plan and Plan Documents

13.    Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Order, the Plan and all Plan-related documents (including, but not limited to, the Plan Documents) shall be, and hereby are, valid, binding and enforceable notwithstanding any otherwise applicable nonbankruptcy law. Each of the Plan Documents (to the extent not already approved by order of this Court) is hereby approved. The Debtors and New GPEG Entities may modify, amend or enter into the Plan Documents, without further order of the Court.

## Authorization to Implement the Plan

14.    Upon the entry of this Order, New GPEG, the Debtors and their Affiliates are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into, or otherwise make effective all documents arising in connection therewith, including, without limitation, the Plan Documents (as they may be amended or modified as contemplated or permitted by the Plan), prior to, on and after the Effective Date. All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the Court such that no further approval, act or action need to be taken under any applicable law, order, rule or regulation, including without limitation, any action otherwise required by the stockholders or directors of New GPEG, the Debtors and their Affiliates.

15.    The approvals and authorizations specifically set forth in this Order are not intended to limit the authority of any Debtor, New GPEG Entity or their Affiliates or any officer

thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Order.

16.    The Initial Board of directors of New GPEG is authorized to serve, is duly qualified and shall be empowered to act as permitted by applicable non-bankruptcy law on the Effective Date without further reference to the Court.

### Cancellation of Instruments and Securities

17.    Upon the occurrence of the Effective Date, the Subordinated Notes shall be cancelled and annulled, except for the rights of the Noteholders to receive the payments and other treatment provided for such Noteholders under the Plan.

18.    On the Effective Date, all Equity Interests in GPEG shall be cancelled and annulled.

### Capital Raising Transactions

19.    All of the transactions contemplated by Article X of the Plan, including the Rights Offering and Private Placement, shall be, and hereby are, approved in all respects.

### Separate Existence/Revesting of Assets

20.    Except as otherwise provided in Article VIII of the Plan, each of the Debtors shall continue to exist after the Effective Date as a separate entity, with all the powers available to such legal entity, in accordance with applicable law and pursuant to the New GPEG Constituent Documents, which shall become effective upon the occurrence of the Effective Date. On or after the Effective Date, the Debtors may, within their sole and exclusive discretion, take such action as permitted by applicable non-bankruptcy law as they determine is reasonable and appropriate.

21.    Upon the occurrence of the Effective Date, except as otherwise expressly provided in the Plan, title to all of the Assets of the Debtors shall vest in the New GPEG Entities free and clear of all liens, Claims, Causes of Action, interests, security interests and other

encumbrances and without further order of the Court. On and after the occurrence of the Effective Date, except as otherwise provided in the Plan, the New GPEG Entities may operate their business and may use, acquire and dispose of their Assets free of any restrictions of the Bankruptcy Code.

### Retention of Causes of Action

22.     Except as otherwise provided in the Plan, all Causes of Action of any of the Debtors and their respective Estates, including Avoidance Actions and the Deltak Avoidance Actions, shall, upon the occurrence of the Effective Date, be transferred to, and be vested in, the New GPEG Entities and/or the Deltak Plan Administrator, as applicable, for the benefit of holders of Allowed Claims and Equity Interests under the Plan. Except as otherwise provided in the Plan, (i) the New GPEG Entities' rights to commence, prosecute or settle such Causes of Action and (ii) the Deltak Plan Administrator's rights to commence, prosecute or settle the Deltak Avoidance Actions, shall be preserved notwithstanding the occurrence of the Effective Date.

23.     No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors will not pursue any and all available Causes of Action against them. The Debtors, the Estates, and the Deltak Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan or the Plan Documents. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes

of Action upon or after the confirmation or consummation of the Plan by reason of entry of this Order.

## Disbursing Agent/Distributions

24. New GPEG is approved as the Disbursing Agent and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan and any applicable Plan Document. Pursuant to the terms and provisions of the Plan, and except as provided in Section 11.5 of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan or any Plan Document on the relevant Plan Distribution Date therefor.

25. Except as otherwise ordered by this Court or as provided in the Plan, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (including, but not limited to, taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties, or if the parties are unable to agree, as determined by this Court.

26. For the purpose of making Plan Distributions, the transfer ledger in respect of the GPEG Equity Interests shall be closed as of the close of business on the Effective Date, and the Disbursing Agent, the Deltak Plan Administrator and their respective agents shall be entitled to recognize and deal for all purposes herein with only those holders of record stated on the transfer ledger maintained by the stock transfer agent for the GPEG Equity Interests as of the close of business on the Effective Date. On the Effective Date, all Equity Interests in GPEG shall be cancelled and annulled, and all rights thereunder shall be settled and compromised in full in exchange for the Plan Distributions to be made to the holders of all GPEG Equity Interests.

27.    Interest upon Allowed Claims shall be, and hereby is, payable only as set forth in the Plan or any Final Order.

28.    Subject to Section 11.6 of the Plan, notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Court, other than (a) the settlement or compromise of a Claim where the difference between the amount of the Claim listed on the Debtors' Schedules and the amount of the Claim proposed to be Allowed under the settlement is in excess of $100,000, or (b) any settlement or compromise of a Claim or Cause of Action that involves an Insider.

29.    Subject to Section 11.6 of the Plan, the Disbursing Agent may, at any time, request that the Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Disbursing Agent or the Debtors have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any Contested Claim, such estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

### Administration of the Deltak Plan Assets

30.    The Deltak Plan Administrator Agreement, substantially in the form filed as a Plan Document, is hereby approved.

37

31.    The appointment of Robert Troisio as the Deltak Plan Administrator is hereby approved. The Deltak Plan Administrator shall be compensated on an hourly basis at the rate of $395.00 per hour, paid in the manner set forth in and consistent with the Deltak Plan Administrator Agreement. The Deltak Plan Administrator shall have all powers, rights, duties and protections afforded the Deltak Plan Administrator under the Plan and any applicable Plan Document.

32.    On the Effective Date, the Deltak Plan Assets, including and together with the Deltak Settlement Amount, the Deltak Avoidance Actions, the Deltak Warranty Claim, and the GPEG Indemnity, shall be transferred to the Deltak Plan Administrator free and clear of all liens, claims and encumbrances, including, without limitation, the liens and claims of any lender to New GPEG under the Exit Facility and the Exit Facility Documents. On and after the Effective Date, the Deltak Plan Administrator shall hold and use the Deltak Plan Assets, including and together with the Deltak Settlement Amount, the Deltak Avoidance Actions, the Deltak Warranty Claim, and the GPEG Indemnity, in a manner consistent with and as required by the Plan, this Order and the Deltak Plan Administrator Agreement.

33.    Pursuant and subject to the Plan, the Deltak Plan Administrator Agreement and this Order, the Deltak Plan Administrator shall have all rights, powers and duties necessary to carry out his or her responsibilities under the Plan in his or her reasonable business judgment and to the extent in the best interests of holders of Allowed Claims in Deltak Class 5 – Unsecured Claims. These rights, powers and duties, which shall be exercised by the Deltak Plan Administrator on behalf of Deltak and its Estate include, without limitation, the right to, without further order of this Court (unless Court approval is required as a result of an objection by the Disbursing Agent or other action taken by the Disbursing Agent, in either event pursuant to

Section 11.6 of the Plan): (i) invest all or a portion of the Deltak Settlement Amount in any investment vehicle permitted by section 345 of the Bankruptcy Code, (ii) make, file and settle or otherwise resolve objections to Claims against Deltak, (iii) seek estimation for any purpose under section 502(c) of the Bankruptcy Code of any Claim filed against Deltak, (iv) hold the Deltak Plan Assets for the benefit of holders of Allowed Unsecured Claims against Deltak, (v) establish the various reserves required or contemplated under the Deltak Plan Treatment, (vi) make Plan Distributions to holders of Allowed Unsecured Claims against Deltak in accordance with the terms of the Plan, and (vii) take any and all other actions reasonably necessary to effectuate the purposes of the Deltak Plan Treatment. Notwithstanding anything to the contrary in the Plan or this Order, the Deltak Plan Administrator shall take no action contrary to or inconsistent with the terms of that certain letter dated October 17, 2007 executed in connection with the DPEC sale and DPEC Sale Order. Specifically, and without limitation to the foregoing sentence, (x) in the event the Deltak Plan Administrator obtains an assignment from SNC-Lavalin Power Ontario, Inc. of it's purported claims against DPEC, then the Other SNC Claims (as defined in the DPEC Sale Order) shall be deemed to be pending at that time, whether or not such Other SNC Claims are actually then pending; and (y) any DPEC Warranty Claim pursued by the Deltak Plan Administrator shall be limited to a warranty claim of Deltak against DPEC arising from and related to a filed and pending claim against Deltak implicating the breach of a DPEC warranty; provided, however, in the event the applicable filed claim against Deltak is the subject of a completion agreement, said claim must have been allowed pursuant to an order of the Court and, provided further, that in all cases the amount of the DPEC Warranty Claim shall not exceed the amount of the pending filed, or as applicable, Allowed Claim against Deltak giving rise to the DPEC Warranty Claim.

34.    The Disbursing Agent shall have standing to appear and be heard on any issue relating to the Deltak Plan Treatment, the resolution of Allowed Claims against Deltak and the exercise of the Deltak Plan Administrator's duties under Article XI of the Plan, including any objections thereto.

## Executory Contracts and Unexpired Leases

35.    Except as otherwise provided for in the Plan, on the Effective Date, all executory contracts and unexpired leases of the Debtors shall be, and hereby are, assumed or rejected in accordance with Article VI of the Plan.

36.    Each executory contract and unexpired lease to be assumed or assumed and assigned by the Debtors shall include all modifications, amendments, supplements, restatements or other similar agreements made directly or indirectly by any agreement, instrument or other document to which the Debtors' counterparties have assented that affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption Schedule.

37.    Inclusion of a contract, lease or other agreement on the Rejection Schedule shall constitute adequate and sufficient notice that (a) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims under the Plan, and (b) neither the Debtors nor the New GPEG Entities are bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder. The inclusion of a contract, lease or other agreement in Section 16.1(a) of the Plan or on the Rejection Schedule or Assumption Schedule shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other

agreement are time-barred from asserting Claims against the Debtors. The Debtors reserve all rights with respect to the characterization of any such agreements.

38.     The assumption and assignment of each of the executory contracts and unexpired leases that is designated to be assumed and assigned as set forth in the Assumption Schedule or as otherwise designated as being assumed and assigned in Section 16.1(a) of the Plan and for which no timely objection was filed as required by Section 16.1(d) of the Plan is approved pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code and any objections to such assumption and assignment are hereby deemed waived in all respects. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall have no liability for any breach of such assumed and assigned executory contract or lease occurring after such assignment, except as is specifically provided in the Plan.

39.     At the election of the Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding: (a) the amount of any cure payments; (b) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assigned; or (c) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable.

40.     Any non-Debtor counterparty to an agreement listed on the Assumption Schedule who disputes the scheduled cure obligation contained therein was required to file with the Court,

and serve upon the Debtors and the Committees, a written objection to the cure obligation, setting forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption and assignment of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing. The cure obligation set forth on the Assumption Schedule is binding upon each non-Debtor counterparty that failed to file and serve an objection satisfying the requirements of this paragraph and each such non-Debtor counterparty is deemed to have waived any and all objections to the assumption or assumption and assignment of the relevant agreement as proposed by the Debtors.

41.     Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is rejected pursuant to Article XVI of the Plan, no later than thirty (30) days after the Confirmation Date; provided, however, that all counterparties to executory contracts that are subject to the Special Bar Date must have filed with the Court and served on the Debtors a proof of claim asserting any Claims created by the rejection of their respective contracts in accordance with the Special Bar Date Notice. Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice, Special Bar Date Notice, or Section 16.3 of the Plan, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtors, the New GPEG Entities, their respective Estates, Affiliates, or Assets. Unless otherwise ordered by the Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured

Claims under the Plan subject to objection by the Disbursing Agent and, where applicable, the Deltak Plan Administrator.

### Certain Provisions Regarding the Exit Financing

42. Subject to paragraph 32 of this Order, the Exit Facility Documents shall constitute legal, valid, binding and authorized obligations of the Debtors and the New GPEG Entities, as applicable, enforceable in accordance with their terms. The obligations of the Debtors and the New GPEG Entities arising pursuant to the Exit Facility and the Exit Facility Documents are in exchange for fair and reasonably equivalent value and do not constitute a fraudulent conveyance or transfer and are not otherwise avoidable under any provision of the Bankruptcy Code or applicable non-bankruptcy law. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility Documents shall be deemed approved and shall be legal, valid, binding and enforceable first priority liens on the collateral granted thereunder, except to the extent senior liens are permitted therein. In furtherance of the foregoing, the Debtors and the New GPEG Entities, as applicable, and any other person granting such liens and security interests, are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of any state, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties. Pending the execution of the Exit Facility Documents and the closing of the Exit Facility, the Backstop Investors reserve all of their rights under the Backstop Stock Purchase Agreement with respect to the Exit Facility.

## Releases and Exculpations

43.    The releases set forth in Sections 8.14 and 8.15 of the Plan shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date.

44.    The Deltak Plan Administrator, together with his or her employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action, arising out of the discharge of the powers and duties conferred upon the Deltak Plan Administrator by the Plan, any Final Order of this Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Deltak Plan Administrator's gross negligence or willful misconduct. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any claim or Cause of Action against the Deltak Plan Administrator or his or her employees, agents, and representatives for making Plan Distributions. Nothing contained in Section 11.4 of the Plan shall preclude or impair any holder of an Allowed Unsecured Claim against Deltak from bringing an action in this Court against the Deltak Plan Administrator to compel the making of Plan Distributions on account of such Allowed Claim.

45.    The Disbursing Agent, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of this Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against

the Disbursing Agent or its respective officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in Section 15.3 of the Plan shall preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in the Court against any Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest.

46.    None of the Debtors, the Committees and their respective members (in their capacity as such), the Noteholders (in their capacity as such), the Backstop Investors (in their capacity as such), or any of their respective officers, directors, members, employees, agents, representatives, advisors, attorneys or successors and assigns will have or incur any liability to any Person for any act or omission in connection with, or arising out of, the pursuit of confirmation of the Plan, the consummation of the Plan, the Rights Offering and the Private Placement, the negotiation, filing or pursuit of the Noteholder Settlement Agreement or the Backstop Stock Purchase Agreement or the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as finally determined by this Court, and, in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated Persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan, the Rights Offering, the Private Placement, the Noteholder Settlement Agreement, or the Backstop Stock Purchase Agreement.

### Retention of Jurisdiction

47.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Court shall retain and shall have exclusive jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Chapter 11 Cases or the Plan (except in the case of the Exit

Facility Documents, which shall be subject to the jurisdictional provisions set forth therein); or
(c) that relates to the matters set forth in Article XVII of the Plan.

## Effect of Confirmation

48.    The rights afforded in the Plan and the treatment of all Claims and Equity
Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of
all Claims and Equity Interests of any nature whatsoever, including any accrued post-petition
interest, against the Debtors and the Debtors in Possession, or any of their Estates, Assets,
properties, or interests in property. Except as otherwise provided in the Plan or this Order, on the
Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors in
Possession shall be satisfied, discharged, and released in full. Neither the New GPEG Entities
nor the Debtors shall be responsible for any pre-Effective Date obligations of the Debtors or the
Debtors in Possession, except those expressly assumed by the New GPEG Entities or any such
Debtor, as applicable. Except as otherwise provided in the Plan or this Order, all Persons shall
be precluded and forever barred from asserting against the New GPEG Entities, the Debtors,
their respective successors or assigns, or their Estates, Affiliates, Assets, properties, or interests
in property any event, occurrence, condition, thing, or other or further Claims or Causes of
Action based upon any act, omission, transaction, or other activity of any kind or nature that
occurred or came into existence prior to the Effective Date, whether or not the facts of or legal
bases therefor were known or existed prior to the Effective Date.

49.    Except as otherwise provided in the Plan or this Order, on the Effective Date,
without further notice or order, all Claims of any nature whatsoever shall be automatically
discharged forever. Except as otherwise provided in the Plan or this Order, on the Effective
Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and

released from any and all Claims, including, but not limited to, demands and liabilities that arose

before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), and

502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed

or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is

allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such

debt has accepted the Plan. This Order shall be a judicial determination of discharge of all

liabilities of the Debtors, their Estates, and all successors thereto. As provided in section 524 of

the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates,

or any successor thereto at any time obtained to the extent it relates to a discharged Claim, and

operates as an injunction against the prosecution of any action against the New GPEG Entities or

property of the Debtors or their Estates to the extent it relates to a discharged Claim.

      50.    Except as otherwise provided in the Plan or this Order, upon the occurrence of the

Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the

fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and

Equity Interests shall be precluded from asserting against the New GPEG Entities and their

Affiliates, the Debtors, their Assets, or any property dealt with under the Plan, any further or

other Cause of Action based upon any act or omission, transaction, event, thing, or other activity

of any kind or nature that occurred or came into existence prior to the Effective Date.

      51.    Except as otherwise provided in the Plan or this Order, the New GPEG Entities

and their Affiliates shall not have, and shall not be construed to have or maintain any liability,

Claim, or obligation, that is based in whole or in part on any act, omission, transaction, event,

other occurrence or thing occurring or in existence on or prior to the Effective Date of the Plan

and no such liabilities, Claims, or obligations for any acts shall attach to the New GPEG Entities

and their Affiliates.

52.     Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

53.     The provisions of section 1145 of the Bankruptcy Code are applicable to the issuance of New Common Stock and Rights and the offer and sale of the New Common Stock of New GPEG pursuant to the Rights issued in the Rights Offering pursuant to Section 5.1(g) of the Plan and all such issuances, offers and sales are exempt from registration under Section 5 of the Securities Act and any State or local law otherwise requiring registration.

54.     The offer and sale of each of (i) the Backstop New Common Stock, (ii) the Direct Purchase Shares, (iii) the Consideration Warrants, (iv) any exercise of Consideration Warrants for New Common Stock and (v) the New Common Stock in the Private Placement, is subject to the "private placement" exemption provided by Section 4(2) of the Securities Act. Each such offer and sale complies with the "safe harbor" provided by Regulation D under the Securities Act, was made only to those holders of GPEG Equity Interests who are "accredited investors" (as such term is defined in Regulation D) and are exempt from registration under the Securities Act.

## Injunctions

55.     On the Effective Date and except as otherwise provided in the Plan or this Order, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the New GPEG Entities and their Affiliates, the Debtors, the Estates, the Assets, or the

Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):

> (a)     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);
>
> (b)     enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;
>
> (c)     creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and
>
> (d)     asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 18.19 of the Plan.

56.     On the Effective Date, all Persons who have been, are, or may be holders of Claims against or Equity Interests in any of the Debtors shall be permanently enjoined from seeking disgorgement of the Noteholder Settlement Amount and any interest and/or legal fees and costs paid to the Noteholders pursuant to the Noteholder Settlement to the Debtors and/or the Estates after payment thereof to the Noteholders in accordance with the Plan on the Effective Date notwithstanding the pendency of any appeal from this Order which has not been stayed.

### **Special Provisions Regarding Resolution of Certain Objections**

57.     The following provisions reflect the consensual resolution of certain of the Objections and objections raised informally prior to the deadline for objection to the Plan.

(a)     The Central States and the New England Teamsters Pension Funds. Notwithstanding anything to the contrary contained in the Plan or this Order, any contingent

Claims of (i) the Central States, Southeast and Southwest Area Pension Fund (the "Central States Pension Fund") and/or (ii) the New England Teamsters and Trucking Industry Pension Fund (the "New England Pension Fund"), each a "multi-employer plan" as that term is defined by 29 U.S.C. § 1301(a)(3) (respectively, the "Central States Plan" and the "New England Plan"), against the Debtors or any third-party to the Central States Plan or the New England Plan for withdrawal liability under 29 U.S.C. §§ 1383 and 1385, if any, are left unimpaired under the Plan, shall not be discharged and shall continue unaltered, and no third-party shall be released from (i) any such Claim that the Central States Pension Fund may have against any third-party arising solely out of the Debtors' participation in the Central States Plan or (ii) any such Claim that the New England Pension Fund may have against any third-party arising solely out of the Debtors' participation in the New England Plan; provided, however, that such contingent Claims of the Central States Pension Fund and the New England Pension Fund (the "Contingent Claims") may not be asserted against the "Deltak Plan Assets" (as that term is defined in the Plan). For the avoidance of doubt, the foregoing provision shall not apply to Claim Nos. 621–631 filed by the Central States Pension Fund, which Claims are the liquidated, non-contingent withdrawal liability Claims filed in these Chapter 11 Cases by the Central States Pension Fund (the "Central States Liquidated Claims"); provided, however, that to the extent the Central States Liquidated Claims are Allowed and are required to be satisfied (i) the Debtors agree that such Claims shall be satisfied by the Williams Debtors, and (ii) the Williams Debtors shall not have any rights of contribution or subrogation against any other Debtor or the Deltak Plan Assets on account of their satisfaction of such Central States Liquidated Claims.

(b)    The U.S. Trustee Objection. Notwithstanding Sections 8.14 and 8.15 of the Plan and anything to the contrary in this Order, the releases contained in Sections 8.14 and

8.15 of the Plan shall not apply to the Debtors' and their non-Debtor affiliates' former officers and directors who did not serve in such capacity following the Petition Date.

(c)    ACE Insurance Policies.  ACE American Insurance Company, Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, and possibly other members of the ACE group of companies (collectively, "ACE") issued certain insurance policies for various policy periods (collectively, the "Policies") that may provide prepetition and/or post-petition coverage for the Debtors and/or all or part of certain Claims.  To the extent the ACE Policies are executory, the Plan constitutes a motion to assume the ACE Policies as set forth in Article XVI of the Plan.  To the extent the ACE Policies are not considered executory, they will be reinstated, and whether assumed or reinstated will be assigned to the New GPEG Entities and the New GPEG Entities will perform the insureds' obligations under the ACE Policies, including, without limitation, the payment of any audited or additional premiums, deductibles, and/or self-insured retentions.  Nothing in this Order or the Plan will alter, amend or modify the terms, conditions, exclusions, limitations and endorsements of the ACE Policies, and the rights, duties, and obligations of the Debtors and ACE under the Policies and applicable non-bankruptcy law will remain in full force and effect.

(d)    Minnesota Self-Insurers' Security Fund.  From and after the Effective Date, (i) the Debtors and the New GPEG Entities will continue to administer and pay all valid claims for benefits and liabilities arising under the Debtors' workers' compensation programs for which the Debtors or New GPEG Entities are responsible under Minnesota workers' compensation law, regardless of when the applicable injuries were incurred, in accordance with the Debtors' prepetition practices and procedures, applicable plan documents and Minnesota workers' compensation law, and (ii) nothing in the Plan shall discharge, release, or relieve the

Debtors or the New GPEG Entities from any current or future liability under workers'
compensation law in Minnesota, including guarantees given to the Minnesota Department of
Commerce and/or Minnesota Self-Insurers' Security Fund by GPEG on account of payment
obligations of certain Debtor subsidiaries, which obligations New GPEG specifically assumes.
The Debtors expressly reserve the right to challenge the validity of any claim for benefits or
liabilities arising under any workers' compensation program.

      (e)    Maasvlakte Energie B.V. Notwithstanding the definition of Assets and
Deltak Plan Assets in the Plan and notwithstanding the provisions of Section 8.5 of the Plan
regarding re-vesting of assets, neither the Plan nor this Order shall be deemed to adjudicate or
determine any facts or legal issues with respect to any asserted right by any Debtor to a refund of
VAT taxes from the Netherlands, and the rights of the interested parties in any such VAT tax
issues are expressly preserved and shall survive confirmation, including but not limited to
whether any such refund is Estate property or is subject to any defense or offset.

      Notwithstanding Section 18.19 of the Plan regarding setoff or any
provision in the Plan or this Order to the contrary, the setoff rights, if any, of Maasvlakte and/or
the relevant VAT taxing authority of the Netherlands are expressly preserved; provided,
however, that nothing contained herein shall abrogate or modify any previous bar date order with
respect to the assertion of Claims against any of the Estates for the purpose of obtaining an
affirmative (Cash) recovery from the Estates.

      Notwithstanding anything in this Order or the Plan to the contrary, no
determination has been made as to whether Section 18.21 of the Plan applies to the holder of
Claim numbers 1093 and 1094, and the determination of said issue and the other issues raised in
Maasvlakte's Objection filed at Docket No. 2191, and the Debtors' response thereto contained in

the Confirmation Memorandum, is expressly reserved by the Court to be made at a later time, pursuant to a separate order of the Court.

Notwithstanding the retention of jurisdiction provisions in Article XVII of the Plan, and notwithstanding Maasvlakte's vote in favor of the Plan, all rights of the Debtors, the Committees and Maasvlakte, and their successors and assigns, are reserved as to whether disputes concerning the amount of Maasvlakte's rejection damages should be decided by arbitration as provided under Maasvlakte's original contractual documents or by this Court, and no provision of the Plan or this Order shall in any way impair the rights of the parties in such respect.

## **Miscellaneous Provisions**

58.    The stay in effect in the Chapter 11 Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in this Order, Section 18.22 of the Plan and/or sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements and bills of sale) or the taking of such other actions as are necessary to effectuate the transactions contemplated by the Plan or by this Order prior to the Effective Date.

59.    During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as Debtors in Possession, subject to the oversight of the Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Court that are then in full force and effect.

60.    Except with respect to the treatment of any Claim, nothing in the Plan or this

Order shall be construed to modify, discharge, alter, amend, or impair the terms of, or

rights under or reserved in, any stipulation or agreement (including any reservations of rights

contained therein) between a Debtor and any party in interest that has been approved by a Final

Order (each a "Settlement Agreement"). Nothing in the Plan or this Order creates jurisdiction in

the Court that the Court otherwise would not have over any such rights under or reserved in any

Settlement Agreement.

61.    Pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the

Effective Date, retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code),

if any, shall continue to be paid in accordance with applicable law.

62.    Notwithstanding anything contained herein or in the Plan, the Plan Documents or

any other document filed with the Court in connection with the Chapter 11 Cases, the

Committees shall remain in existence and shall have and retain all the rights, powers, duties and

responsibilities conferred upon them under the Bankruptcy Code and by any order of the Court

until the Effective Date. Notwithstanding the foregoing, the Committees shall remain in

existence for the purpose of, and pending, the resolution of the matters covered by Section 6.2 of

the Plan.

63.    In accordance with Section 18.15 of the Plan, the Debtors will serve and publish

notice of the entry of this Order.

64.    To the extent that any provisions of this Order may be inconsistent with the terms

of the Plan or any Plan Documents, the terms of this Order shall be binding and conclusive. To

the extent that any provision of any Plan Document may be in conflict with or inconsistent with

any provision of the Plan, the terms of the Plan shall govern and be binding and conclusive.

Dated: Wilmington, Delaware
     December 21, 2007

                               THE HONORABLE BRENDAN L. SHANNON
                               UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

## SCHEDULE OF REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| | Debtor | Counterparty | Contract Name/Description |
|---|---|---|---|
| 1. | Braden Manufacturing, L.L.C. | ARTUN ERTEM ENGINEERING | Sales Representative Agreements |
| 2. | Braden Manufacturing, L.L.C. | CAMERON ASSOCIATES | Sales Representative Agreements |
| 3. | Braden Manufacturing, L.L.C. | DORNER COMPANY | Sales Representative Agreements |
| 4. | Braden Manufacturing, L.L.C. | ELMORE ENERGY, L.L.C. | Sales Representative Agreements |
| 5. | Braden Manufacturing, L.L.C. | GENCO | Sales Representative Agreements |
| 6. | Braden Manufacturing, L.L.C. | GEORGE S. EDWARDS CO., INC. | Sales Representative Agreements |
| 7. | Braden Manufacturing, L.L.C. | GEORGE S. EDWARDS CO., INC. | Termination Agreements |
| 8. | Braden Manufacturing, L.L.C. | HAMED A. AL ZAMIL & BROTHERS CO. | Sales Representative Agreements |
| 9. | Braden Manufacturing, L.L.C. | MESCO-OLIVER GROUP, INC. | Sales Representative Agreements |
| 10. | Braden Manufacturing, L.L.C. | PROCESS SALES COMPANY, INC. | Sales Representative Agreements |
| 11. | Braden Manufacturing, L.L.C. | PROCESS SALES COMPANY, INC. | Sales Representative Agreements |
| 12. | Braden Manufacturing, L.L.C. | TOMPKINS & KINNER CO. INC. | Sales Representative Agreements |
| 13. | Global Power Equipment Group Inc. | AT&T CORP. | Utilities/Information Technology Agreements |
| | | | AT&T MA No. 120588 |
| 14. | Global Power Equipment Group Inc. | HARVEST PARTNERS, INC. | Management Agreement |
| 15. | Global Power Equipment Group Inc. | TELEMET AMERICA, INC. | Maintenance/Service Agreements |
| 16. | Deltak, L.L.C. | AACCO | Purchase order #D4070 |
| 17. | Deltak, L.L.C. | AARDING THERMAL ACOUSTICS B.V. | Purchase order #E2960 |

| | Debtor | Counterparty | Contract Name/Description |
|---|---|---|---|
| 18. | Deltak, L.L.C. | AFFORDABLE TRANSLATIONS, INC. | Purchase order #D9442 |
| 19. | Deltak, L.L.C. | AFFORDABLE TRANSLATIONS, INC. | Purchase order #E1325 |
| 20. | Deltak, L.L.C. | AFFORDABLE TRANSLATIONS, INC. | Purchase order #E2753 |
| 21. | Deltak, L.L.C. | AFFORDABLE TRANSLATIONS, INC. | Purchase order #E2765 |
| 22. | Deltak, L.L.C. | AIR CONTROL ESSENTIALS | Purchase order #D9770 |
| 23. | Deltak, L.L.C. | AIRFLOW SCIENCES CORP. | Purchase order #D9511 |
| 24. | Deltak, L.L.C. | AKZO NOBEL PROTECTIVE COATINGS | Purchase order #D8020 |
| 25. | Deltak, L.L.C. | AKZO NOBEL PROTECTIVE COATINGS | Purchase order #D9117 |
| 26. | Deltak, L.L.C. | AKZO NOBEL PROTECTIVE COATINGS | Purchase order #G1011 |
| 27. | Deltak, L.L.C. | AMERICAN PIPING PRODUCTS INC. | Purchase order #E3532 |
| 28. | Deltak, L.L.C. | API CONSTRUCTION COMPANY | Purchase order #D4779 |
| 29. | Deltak, L.L.C. | API CONSTRUCTION COMPANY | Purchase order #E3251 |
| 30. | Deltak, L.L.C. | API CONSTRUCTION COMPANY | Purchase order #E3251 |
| 31. | Deltak, L.L.C. | ARCHITECTURAL CONSULTANTS, INC | Purchase order #E0834 |
| 32. | Deltak, L.L.C. | ARTHUR LOUIS STEEL CO. | Purchase order #C5501 |
| 33. | Deltak, L.L.C. | ASIA SURVEYORS & INSPECTORS CO | Purchase order #T03451 |
| 34. | Deltak, L.L.C. | ATLAS SPECIALIZED TRANS. INC. | Purchase order #T04162 |
| 35. | Deltak, L.L.C. | BBC CHARTERING & LOGISTICS | Purchase order #T04462 |
| 36. | Deltak, L.L.C. | BBC CHARTERING & LOGISTICS | Purchase order #T04501 |

2

| | Debtor | Counterparty | Contract Name/Description |
|---|---|---|---|
| 37. | Deltak, L.L.C. | BENDTEC, INC. | Purchase order #D5560 |
| 38. | Deltak, L.L.C. | BENTLY NEVADA | Purchase order #E0200 |
| 39. | Deltak, L.L.C. | BERG-JOHNSON | Purchase order #E3290 |
| 40. | Deltak, L.L.C. | BMT SALVAGE LIMITED | Purchase order #T03349 |
| 41. | Deltak, L.L.C. | BORDER STATES ELECTRIC SUPPLY | Purchase order #E3483 |
| 42. | Deltak, L.L.C. | BRADEN MANUFACTURING | Purchase order #E2061 |
| 43. | Deltak, L.L.C. | BRADEN MANUFACTURING | Purchase order #E2062 |
| 44. | Deltak, L.L.C. | BRADEN MANUFACTURING | Purchase order #D8987 |
| 45. | Deltak, L.L.C. | BRADEN MANUFACTURING | Purchase order #D8986 |
| 46. | Deltak, L.L.C. | BRADEN MANUFACTURING | Purchase order #D1531 |
| 47. | Deltak, L.L.C. | BRADEN-EUROPE B.V. | Purchase order #D8990 |
| 48. | Deltak, L.L.C. | BRADEN-EUROPE B.V. | Purchase order #D6855 |
| 49. | Deltak, L.L.C. | BRADEN-EUROPE B.V. | Purchase order #E0823 |
| 50. | Deltak, L.L.C. | BRENNY TRANSPORTATION INC. | Purchase order #T04350 |
| 51. | Deltak, L.L.C. | BRENNY TRANSPORTATION INC. | Purchase order #T04314 |
| 52. | Deltak, L.L.C. | BRENNY TRANSPORTATION INC. | Purchase order #T04479 |
| 53. | Deltak, L.L.C. | BUHLMANN CO. KG. | Purchase order #D9132 |
| 54. | Deltak, L.L.C. | BUHLMANN CO. KG. | Purchase order #D9133 |
| 55. | Deltak, L.L.C. | BURGESS-MANNING, INC. | Purchase order #E0724 |

| Debtor | Counterparty | Contact Name/Description |
|---|---|---|
| 56. Deltak, L.L.C. | BURGESS-MANNING, INC. | Purchase order #C1844 |
| 57. Deltak, L.L.C. | BURLINGTON NORTHERN | Purchase order #T04504 |
| 58. Deltak, L.L.C. | BURLINGTON NORTHERN | Purchase order #T04502 |
| 59. Deltak, L.L.C. | BURLINGTON NORTHERN | Purchase order #T04503 |
| 60. Deltak, L.L.C. | CALIFORNIA UNITED TERMINALS | Purchase order #T04467 |
| 61. Deltak, L.L.C. | CAMPBELL SEVEY INC. | Purchase order #D3593 |
| 62. Deltak, L.L.C. | CAMPBELL SEVEY INC. | Purchase order #D2039 |
| 63. Deltak, L.L.C. | CATA STEEL BUILDING PRODUCTS | Purchase order #C1602 |
| 64. Deltak, L.L.C. | CATA STEEL BUILDING PRODUCTS | Purchase order #C3066 |
| 65. Deltak, L.L.C. | CATA STEEL BUILDING PRODUCTS | Purchase order #D1826 |
| 66. Deltak, L.L.C. | CATA STEEL BUILDING PRODUCTS | Purchase order #D1827 |
| 67. Deltak, L.L.C. | CATA STEEL BUILDING PRODUCTS | Purchase order #G10020 |
| 68. Deltak, L.L.C. | CATA STEEL BUILDING PRODUCTS | Purchase order #G10211 |
| 69. Deltak, L.L.C. | CATA STEEL BUILDING PRODUCTS | Purchase order #C1410 |
| 70. Deltak, L.L.C. | CATALYST | Purchase order #D0437 |
| 71. Deltak, L.L.C. | CHAPPELL CENTRAL, INC. | Purchase order #D3751 |
| 72. Deltak, L.L.C. | CHAPPELL CENTRAL, INC. | Purchase order #D3649 |
| 73. Deltak, L.L.C. | CHAPPELL CENTRAL, INC. | Purchase order #D1992 |

4

| Debtor | Counterparty | Contract Name/Description |
|--------|--------------|---------------------------|
| 74. Deltak, L.L.C. | CHICAGO TUBE & IRON COMPANY | Purchase order #E3542 |
| 75. Deltak, L.L.C. | CHUANG YI MODEL DESIGN STUDIO | Purchase order #G10677 |
| 76. Deltak, L.L.C. | CLARK RELIANCE | Purchase order #E3282 |
| 77. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T02357 |
| 78. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T02356 |
| 79. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T02160 |
| 80. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T02055 |
| 81. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T02054 |
| 82. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T01801 |
| 83. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T01798 |
| 84. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T02543 |
| 85. Deltak, L.L.C. | CLIPPER CO., T.C. | Purchase order #T02430 |
| 86. Deltak, L.L.C. | COMMINT TECHNICAL SERVICES INC | Purchase order #E1646 |
| 87. Deltak, L.L.C. | CONSOLIDATED FABRICATORS INC | Purchase order #D3084 |
| 88. Deltak, L.L.C. | CONTROL CENTER INC. | Purchase order #E3284 |
| 89. Deltak, L.L.C. | COPPERSTATE ROOFING SUPPLY | Purchase order #E3635 |
| 90. Deltak, L.L.C. | CORMETECH INC. | Purchase order #E0388 |
| 91. Deltak, L.L.C. | CORTEC CORPORATION, THE | Purchase order #E1184 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 92. Deltak, L.L.C. | CORTEC CORPORATION, THE | Purchase order #E2223 |
| 93. Deltak, L.L.C. | CORTEC CORPORATION, THE | Purchase order #E1734 |
| 94. Deltak, L.L.C. | CORTEC CORPORATION, THE | Purchase order #D8715 |
| 95. Deltak, L.L.C. | CRANE MFG. | Purchase order #E3285 |
| 96. Deltak, L.L.C. | CRANE MFG. | Purchase order #E2361 |
| 97. Deltak, L.L.C. | CRANE MFG. | Purchase order #D9876 |
| 98. Deltak, L.L.C. | CRANE MFG. | Purchase order #D5311 |
| 99. Deltak, L.L.C. | CRANE MFG. | Purchase order #D9612 |
| 100. Deltak, L.L.C. | CRANE MFG. | Purchase order #D9215 |
| 101. Deltak, L.L.C. | CRANE MFG. | Purchase order #D8144 |
| 102. Deltak, L.L.C. | CRANE MFG. | Purchase order #D4800 |
| 103. Deltak, L.L.C. | CRANE MFG. | Purchase order #D4401 |
| 104. Deltak, L.L.C. | CRANE MFG. | Purchase order #D7452 |
| 105. Deltak, L.L.C. | CRANE SUPPLY CANADA | Purchase order #E2159 |
| 106. Deltak, L.L.C. | CRANE SUPPLY CANADA | Purchase order #E1150 |
| 107. Deltak, L.L.C. | CROSBY VALVE | Purchase order #B0213 |
| 108. Deltak, L.L.C. | CROSBY VALVE | Purchase order #E0517 |
| 109. Deltak, L.L.C. | CROSBY VALVE | Purchase order #E3492 |
| 110. Deltak, L.L.C. | CROSBY VALVE | Purchase order #E1888 |

| | Debtor | Counterparty | Contract Name/Description |
|---|---|---|---|
| 111. | Deltak, L.L.C. | CROSBY VALVE | Purchase order #E1922 |
| 112. | Deltak, L.L.C. | CROSBY VALVE | Purchase order #D9608 |
| 113. | Deltak, L.L.C. | CROSBY VALVE | Purchase order #D7448 |
| 114. | Deltak, L.L.C. | CROSBY VALVE | Purchase order #E2882 |
| 115. | Deltak, L.L.C. | CROSBY VALVE | Purchase order #D4700 |
| 116. | Deltak, L.L.C. | CROSBY VALVE | Purchase order #D9276 |
| 117. | Deltak, L.L.C. | CTEP FZCO | Purchase order # QCSF5A0003 |
| 118. | Deltak, L.L.C. | CUSTOM ALLOY | Purchase order #E2118 |
| 119. | Deltak, L.L.C. | DAECHANG HRSG CORP | Purchase order #D4670 |
| 120. | Deltak, L.L.C. | DAECHANG HRSG CORP | Purchase order #D5481 |
| 121. | Deltak, L.L.C. | DAEWON INDUSTRY | Purchase order #D5363 |
| 122. | Deltak, L.L.C. | DAEWON INDUSTRY | Purchase order #D6131 |
| 123. | Deltak, L.L.C. | DAEWON INDUSTRY | Purchase order #D5364 |
| 124. | Deltak, L.L.C. | DAEWON INDUSTRY | Purchase order #D5091 |
| 125. | Deltak, L.L.C. | DAEWON INDUSTRY | Purchase order #D4847 |
| 126. | Deltak, L.L.C. | DAEWON INDUSTRY | Purchase order #D5486 |
| 127. | Deltak, L.L.C. | DAMPER TECHNOLOGY LTD. | Purchase order #D4240 |
| 128. | Deltak, L.L.C. | DEFENCE APPAREL SERVICE | Purchase order #D8955 |
| 129. | Deltak, L.L.C. | DEFENCE APPAREL SERVICE | Purchase order #D9248 |

7

| Debtor | Counterparty | Contract Name/Description |
|--------|-------------|---------------------------|
| 130. Deltak, L.L.C. | DEFENCE APPAREL SERVICE | Purchase order #D9248 |
| 131. Deltak, L.L.C. | DEFENCE APPAREL SERVICE | Purchase order #E0709 |
| 132. Deltak, L.L.C. | DEFENCE APPAREL SERVICE | Purchase order #E0778 |
| 133. Deltak, L.L.C. | DEFENSE APPAREL SERVICE | Purchase order #D7656 |
| 134. Deltak, L.L.C. | DIAMOND VOGEL | Purchase order #E2648 |
| 135. Deltak, L.L.C. | DIAMOND VOGEL | Purchase order #E2844 |
| 136. Deltak, L.L.C. | DOOSAN MECATEC CO., LTD | Purchase order #E2100 |
| 137. Deltak, L.L.C. | DOUGLAS HOWARD & ASSOCIATES | Purchase order #E1444 |
| 138. Deltak, L.L.C. | DRESSER IND. VALVE & INST | Purchase order #E3292 |
| 139. Deltak, L.L.C. | DRESSER IND. VALVE & INST | Purchase order #E0916 |
| 140. Deltak, L.L.C. | DRESSER IND. VALVE & INST | Purchase order #D1879 |
| 141. Deltak, L.L.C. | DRESSER MASONEILAN INC. | Purchase order #D2645 |
| 142. Deltak, L.L.C. | DUNCAN COMPANY | Purchase order #E3295 |
| 143. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #E1936 |
| 144. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #E3141 |
| 145. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #D8971 |
| 146. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #D8755 |
| 147. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #E0050 |
| 148. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #E2759 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 149. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #E2427 |
| 150. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #D8969 |
| 151. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #D8970 |
| 152. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #D9734 |
| 153. Deltak, L.L.C. | DYLAN STAAL B.V. | Purchase order #E3527 |
| 154. Deltak, L.L.C. | EAST CHINA POWER ST. PIPING | Purchase order #G10115 |
| 155. Deltak, L.L.C. | ECHO MAINTENENCE INC. | Purchase order #D8304 |
| 156. Deltak, L.L.C. | EDMONTON EXCHANGERS & MFG | Purchase order #E3227 |
| 157. Deltak, L.L.C. | EDWARDS VALVES INC. | Purchase order #C0840 |
| 158. Deltak, L.L.C. | EDWARDS VALVES INC. | Purchase order #C1728 |
| 159. Deltak, L.L.C. | EDWARDS VALVES INC. | Purchase order #C1729 |
| 160. Deltak, L.L.C. | EMERACHEM LLC | Purchase order #E2092 |
| 161. Deltak, L.L.C. | EUREKA ENGINEERING INC. | Purchase order #C5420 |
| 162. Deltak, L.L.C. | EUREKA ENGINEERING INC. | Purchase order #C5395 |
| 163. Deltak, L.L.C. | EUREKA ENGINEERING LLC | Purchase order #C4661 |
| 164. Deltak, L.L.C. | EUREKA ENGINEERING LLC | Purchase order #C4347 |
| 165. Deltak, L.L.C. | FABRICATED PIPE, INC. | Purchase order #E3257 |
| 166. Deltak, L.L.C. | FABRICATED PIPE, INC. | Purchase order #E3260 |
| 167. Deltak, L.L.C. | FABRICATED PIPE, INC. | Purchase order #E3259 |

| | Debtor | Counterparty | Contract Name/Description |
|---|---|---|---|
| 168. | Deltak, L.L.C. | FAN EQUIPMENT CO. | Purchase order #D3740 |
| 169. | Deltak, L.L.C. | FEDERAL PIPE & STEEL CORP. | Purchase order #E0029 |
| 170. | Deltak, L.L.C. | FEDERAL PIPE & STEEL CORP. | Purchase order #E0026 |
| 171. | Deltak, L.L.C. | FEDTECH INCORPORATED | Purchase order #D5340 |
| 172. | Deltak, L.L.C. | FERGUSON THRALL DISTRIBUTION | Purchase order #E3294 |
| 173. | Deltak, L.L.C. | FISHER | Purchase order #E3283 |
| 174. | Deltak, L.L.C. | FLOWSERVE CORPORATION | Purchase order #E3293 |
| 175. | Deltak, L.L.C. | FOSSIL STEAM TECHNOLOGIES INC | Purchase order #E2351 |
| 176. | Deltak, L.L.C. | FOSSIL STEAM TECHNOLOGIES INC | Purchase order #E2168 |
| 177. | Deltak, L.L.C. | FOXBORO | Purchase order #D7446 |
| 178. | Deltak, L.L.C. | FREIGHT HAULERS | Purchase order #T04694 |
| 179. | Deltak, L.L.C. | GROTH CORP. | Purchase order #E0863 |
| 180. | Deltak, L.L.C. | HALDOR TOPSOE, INC. | Purchase order #E2096 |
| 181. | Deltak, L.L.C. | HARBOR LIFT SERVICES LLC | Purchase order #T04589 |
| 182. | Deltak, L.L.C. | HBE ENG | Purchase order #D5580 |
| 183. | Deltak, L.L.C. | HBE ENG | Purchase order #E1918 |
| 184. | Deltak, L.L.C. | HBE ENG | Purchase order #E1876 |
| 185. | Deltak, L.L.C. | HBE ENG | Purchase order #D9272 |
| 186. | Deltak, L.L.C. | HEAVY TRANSPORT, INC. | Purchase order #T04528 |

10

| Debtor | Counterparty | Contract Name/Description |
|--------|-------------|--------------------------|
| 187. Deltak, L.L.C. | HESECO | Purchase order #E3481 |
| 188. Deltak, L.L.C. | HESECO | Purchase order #E2231 |
| 189. Deltak, L.L.C. | HESECO | Purchase order #E1930 |
| 190. Deltak, L.L.C. | HESECO | Purchase order #D2254 |
| 191. Deltak, L.L.C. | HESECO | Purchase order #E0512 |
| 192. Deltak, L.L.C. | HESECO | Purchase order #D9360 |
| 193. Deltak, L.L.C. | HESECO | Purchase order #E0881 |
| 194. Deltak, L.L.C. | HESECO | Purchase order #E0881 |
| 195. Deltak, L.L.C. | HESECO | Purchase order #D9766 |
| 196. Deltak, L.L.C. | HESECO | Purchase order #D3612 |
| 197. Deltak, L.L.C. | HESECO | Purchase order #D3620 |
| 198. Deltak, L.L.C. | HESECO | Purchase order #D4109 |
| 199. Deltak, L.L.C. | HESECO | Purchase order #D7055 |
| 200. Deltak, L.L.C. | HESECO | Purchase order #D9757 |
| 201. Deltak, L.L.C. | HESECO | Purchase order #E0076 |
| 202. Deltak, L.L.C. | HESECO | Purchase order #E0090 |
| 203. Deltak, L.L.C. | HESECO | Purchase order #D7412 |
| 204. Deltak, L.L.C. | HESECO | Purchase order #E1790 |
| 205. Deltak, L.L.C. | HESECO | Purchase order #E0512 |

11

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 206. Deltak, L.L.C. | HESECO | Purchase order #E0071 |
| 207. Deltak, L.L.C. | HESECO | Purchase order #E0090 |
| 208. Deltak, L.L.C. | HESECO | Purchase order #D9368 |
| 209. Deltak, L.L.C. | HESECO | Purchase order #D9360 |
| 210. Deltak, L.L.C. | HESECO | Purchase order #D9360 |
| 211. Deltak, L.L.C. | HESECO | Purchase order #E0881 |
| 212. Deltak, L.L.C. | HESECO | Purchase order #E2231 |
| 213. Deltak, L.L.C. | HESECO | Purchase order #D7457 |
| 214. Deltak, L.L.C. | HESSLER ASSOCIATES | Purchase order #D1391 |
| 215. Deltak, L.L.C. | HESSLER ASSOCIATES | Purchase order #D8350 |
| 216. Deltak, L.L.C. | HEWLETT-PACKARD | Purchase order #E3011 |
| 217. Deltak, L.L.C. | HITACHI ZOSEN ENGINEERING USA | Purchase order #D0320 |
| 218. Deltak, L.L.C. | HITZ AMERICA INC. | Purchase order #D6757 |
| 219. Deltak, L.L.C. | HONEYWELL | Purchase order #D7902 |
| 220. Deltak, L.L.C. | HOOVER & KEITH INC. | Purchase order #E0614 |
| 221. Deltak, L.L.C. | HUTCHINSON MANUFACTURING | Purchase order #D2803 |
| 222. Deltak, L.L.C. | HUTCHINSON MANUFACTURING | Purchase order #D2176 |
| 223. Deltak, L.L.C. | HUTCHINSON MANUFACTURING | Purchase order #E3317 |
| 224. Deltak, L.L.C. | HUTCHINSON MANUFACTURING | Purchase order #E3322 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 225. Deltak, L.L.C. | HWA SHIN BOLT INDL. CO. LTD. | Purchase order #D5252 |
| 226. Deltak, L.L.C. | HYUNDAI PIPE CO. ,LTD. | Purchase order #D7124 |
| 227. Deltak, L.L.C. | IBERIA ASHLAND CHEMICAL, S.A. | Purchase order #E1264 |
| 228. Deltak, L.L.C. | IMPROVED CONSTRUCTION METHODS | Purchase order #E1125 |
| 229. Deltak, L.L.C. | INDUSTRIAL HOIST | Purchase order #C2293 |
| 230. Deltak, L.L.C. | INDUSTRIAL HOIST | Purchase order #D9728 |
| 231. Deltak, L.L.C. | INSIGHT DIRECT INC. | Purchase order #D0429 |
| 232. Deltak, L.L.C. | INTERMARINE INCORPORATED | Purchase order #T03348 |
| 233. Deltak, L.L.C. | INTERMARINE INCORPORATED | Purchase order #T03417 |
| 234. Deltak, L.L.C. | INTERMARINE INCORPORATED | Purchase order #T03475 |
| 235. Deltak, L.L.C. | INTERMARINE INCORPORATED | Purchase order #T04343 |
| 236. Deltak, L.L.C. | INTERMARINE INCORPORATED | Purchase order #T04343 |
| 237. Deltak, L.L.C. | INTERTEK - ETL SEMKO | Purchase order #T04206 |
| 238. Deltak, L.L.C. | INTERTEK - ETL SEMKO | Purchase order #D7763 |
| 239. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T03963 |
| 240. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T04579 |
| 241. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T04094 |
| 242. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T03977 |

13

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 243. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T03880 |
| 244. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T03553 |
| 245. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T04127 |
| 246. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T03552 |
| 247. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T03551 |
| 248. Deltak, L.L.C. | INTERTEK CALEB BRETT-KIMSCO | Purchase order #T03910 |
| 249. Deltak, L.L.C. | INTREPID INDUSTRIES, INC. | Purchase order #D3098 |
| 250. Deltak, L.L.C. | INTREPID INDUSTRIES, INC. | Purchase order #D6863 |
| 251. Deltak, L.L.C. | INTREPID INDUSTRIES, INC. | Purchase order #E0284 |
| 252. Deltak, L.L.C. | INVENSYS SYSTEMS INC. | Purchase order #D4986 |
| 253. Deltak, L.L.C. | INVENSYS SYSTEMS INC. | Purchase order #D5441 |
| 254. Deltak, L.L.C. | JIANGSU SUYUAN POWER EQUIP. | Purchase order #D9084 |
| 255. Deltak, L.L.C. | JIANGSU SUYUAN POWER EQUIP. | Purchase order #G10218 |
| 256. Deltak, L.L.C. | JIANGSU SUYUAN POWER EQUIP. | Purchase order #G10225 |
| 257. Deltak, L.L.C. | JOHN PICKLE COMPANY, INC. | Purchase order #C1121 |
| 258. Deltak, L.L.C. | JOHN PICKLE COMPANY, INC. | Purchase order #C1360 |
| 259. Deltak, L.L.C. | JOHN ZINK COMPANY, LLC | Purchase order #E0385 |
| 260. Deltak, L.L.C. | JONAS INC. | Purchase order #E1875 |

14

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 261. Deltak, L.L.C. | JONAS INC. | Purchase order #D7451 |
| 262. Deltak, L.L.C. | JONAS INC. | Purchase order #C1427 |
| 263. Deltak, L.L.C. | JONAS INC. | Purchase order #D6222 |
| 264. Deltak, L.L.C. | JONAS INC. | Purchase order #D1876 |
| 265. Deltak, L.L.C. | JONAS INC. | Purchase order #D4793 |
| 266. Deltak, L.L.C. | JONAS INC. | Purchase order #E1919 |
| 267. Deltak, L.L.C. | JONAS INC. | Purchase order #E0909 |
| 268. Deltak, L.L.C. | JONAS INC. | Purchase order #E3494 |
| 269. Deltak, L.L.C. | JONAS INC. | Purchase order #E0636 |
| 270. Deltak, L.L.C. | JONAS INC. | Purchase order #E0518 |
| 271. Deltak, L.L.C. | JONAS INC. | Purchase order #D9607 |
| 272. Deltak, L.L.C. | JONAS INC. | Purchase order #D9271 |
| 273. Deltak, L.L.C. | JUDGE MARINE TECHNOLOGY | Purchase order #T02570 |
| 274. Deltak, L.L.C. | JUDGE MARINE TECHNOLOGY | Purchase order #T03400 |
| 275. Deltak, L.L.C. | JWF INDUSTRIES, INC. | Purchase order #C5287 |
| 276. Deltak, L.L.C. | KAMTEK INDUSTRIAL SERVICE | Purchase order #E1726 |
| 277. Deltak, L.L.C. | KANGRIM INDUSTRIES CO., LTD. | Purchase order #D8457 |
| 278. Deltak, L.L.C. | KANGRIM INDUSTRIES CO., LTD. | Purchase order #D8458 |
| 279. Deltak, L.L.C. | KANGRIM INDUSTRIES CO., LTD. | Purchase order #D1521 |

15

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 280. Deltak, L.L.C. | KENTUBE ENGINEERED PRODUCTS | Purchase order #E2091 |
| 281. Deltak, L.L.C. | KENTUBE FINNED PRODUCTS | Purchase order #E0822 |
| 282. Deltak, L.L.C. | KENTUBE FINNED PRODUCTS | Purchase order #D9649 |
| 283. Deltak, L.L.C. | KM INDUSTRIES | Purchase order #E1056 |
| 284. Deltak, L.L.C. | KNDT & I CO. LTD | Purchase order #D7612 |
| 285. Deltak, L.L.C. | KOCH-OTTO YORK | Purchase order #E1652 |
| 286. Deltak, L.L.C. | KOFLO CORPORATION | Purchase order #D4672 |
| 287. Deltak, L.L.C. | KOFLO CORPORATION | Purchase order #D4671 |
| 288. Deltak, L.L.C. | KSB INC. | Purchase order #D4239 |
| 289. Deltak, L.L.C. | KSB INC. | Purchase order #D4238 |
| 290. Deltak, L.L.C. | LANDSTAR RANGER | Purchase order #T04677 |
| 291. Deltak, L.L.C. | LPG & NH3 SUPPLY INC | Purchase order #D4414 |
| 292. Deltak, L.L.C. | MACTECH INC | Purchase order #E1557 |
| 293. Deltak, L.L.C. | MCJUNKIN | Purchase order #D6733 |
| 294. Deltak, L.L.C. | MCNEILUS STEEL, INC. | Purchase order #C5061 |
| 295. Deltak, L.L.C. | METALLURGICAL EVALUATION | Purchase order #D9862 |
| 296. Deltak, L.L.C. | METL-SPAN 1, LTD. | Purchase order #D9935 |
| 297. Deltak, L.L.C. | METL-SPAN 1, LTD. | Purchase order #C4236 |
| 298. Deltak, L.L.C. | MINNESOTA BEARING COMPANY | Purchase order #B8971 |

16

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 299. Deltak, L.L.C. | MISSISSIPPI WELDING & MACHINE | Purchase order #E1135 |
| 300. Deltak, L.L.C. | MISSISSIPPI WELDING & MACHINE | Purchase order #E1134 |
| 301. Deltak, L.L.C. | MUELLER SALES | Purchase order #E3289 |
| 302. Deltak, L.L.C. | NAMASCO | Purchase order #D4886 |
| 303. Deltak, L.L.C. | NAMASCO | Purchase order #D3442 |
| 304. Deltak, L.L.C. | NAMASCO | Purchase order #D3191 |
| 305. Deltak, L.L.C. | NAMASCO | Purchase order #D2348 |
| 306. Deltak, L.L.C. | NAMASCO | Purchase order #D3442 |
| 307. Deltak, L.L.C. | NANJING BOILER WORKS  CONTROL | Purchase order #G10443 |
| 308. Deltak, L.L.C. | NANJING BOILER WORKS  CONTROL | Purchase order #G10294 |
| 309. Deltak, L.L.C. | NANJING BOILER WORKS  CONTROL | Purchase order #G10237 |
| 310. Deltak, L.L.C. | NANJING BOILER WORKS  CONTROL | Purchase order #G10129 |
| 311. Deltak, L.L.C. | NANJING BOILER WORKS  CONTROL | Purchase order #G10112 |
| 312. Deltak, L.L.C. | NATIONAL ELECTRIC POWER CO. | Purchase order #G10101 |
| 313. Deltak, L.L.C. | NEPTUNE CHEMICAL PUMP COMPANY | Purchase order #D4519 |
| 314. Deltak, L.L.C. | NEW CENTURY ENGINEER. & DESIGN | Purchase order #D1852 |
| 315. Deltak, L.L.C. | NEW YORK BLOWER COMPANY | Purchase order #D0879 |
| 316. Deltak, L.L.C. | NITON CORPORATION | Purchase order #D2656 |
| 317. Deltak, L.L.C. | NORFOLK IRON & METAL COMPANY | Purchase order #D4748 |

17

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 318. Deltak, L.L.C. | NORTH SHORE SUPPLY COMPANY | Purchase order #E1217 |
| 319. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #C1478 |
| 320. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #D4799 |
| 321. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #D2037 |
| 322. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #D4402 |
| 323. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #D7628 |
| 324. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #D8943 |
| 325. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #E1877 |
| 326. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #E1878 |
| 327. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #E1901 |
| 328. Deltak, L.L.C. | NORTHERN FILTRATION | Purchase order #E1920 |
| 329. Deltak, L.L.C. | NORTHERN STATES TRANSPORTATION | Purchase order #T04511 |
| 330. Deltak, L.L.C. | NORTHWESTERN POWER EQUIP | Purchase order #D4410 |
| 331. Deltak, L.L.C. | NOTT COMPANY, W. S. | Purchase order #E3665 |
| 332. Deltak, L.L.C. | NOVASPECT | Purchase order #E3503 |
| 333. Deltak, L.L.C. | O'BRIEN CORPORATION | Purchase order #D6221 |
| 334. Deltak, L.L.C. | OEM FABRICATORS INC. | Purchase order #D3644 |
| 335. Deltak, L.L.C. | ORANGE PUMP & VALVE MFG. INC. | Purchase order #D9620 |
| 336. Deltak, L.L.C. | ORIENT T I | Purchase order #D5653 |

18

| Debtor | Counterparty | Contract Name Description |
|---|---|---|
| 337. Deltak, L.L.C. | ORLEANS MATERIALS | Purchase order #E2936 |
| 338. Deltak, L.L.C. | ORLEANS MATERIALS | Purchase order #E3109 |
| 339. Deltak, L.L.C. | PANTHER PRECISION MACHINE, INC | Purchase order #D9912 |
| 340. Deltak, L.L.C. | PANTHER PRECISION MACHINE, INC | Purchase order #E0453 |
| 341. Deltak, L.L.C. | PANTHER PRECISION MACHINE, INC | Purchase order #E0384 |
| 342. Deltak, L.L.C. | PARKER STEEL CO. | Purchase order #D6128 |
| 343. Deltak, L.L.C. | PARKER STEEL CO. | Purchase order #D6451 |
| 344. Deltak, L.L.C. | PAXTON & VIERLING STEEL CO. | Purchase order #C3412 |
| 345. Deltak, L.L.C. | PETRO-CHEM MEXICANA SA DE CV | Purchase order #D8242 |
| 346. Deltak, L.L.C. | PGI INTERNATIONAL | Purchase order #C1429 |
| 347. Deltak, L.L.C. | PINE POINT WOOD PRODUCTS | Purchase order #D5216 |
| 348. Deltak, L.L.C. | PLYMOUTH TUBE | Purchase order #E0824 |
| 349. Deltak, L.L.C. | POINT LIGHTING CORP. | Purchase order #D7789 |
| 350. Deltak, L.L.C. | PORT-A-BLAST | Purchase order #D4292 |
| 351. Deltak, L.L.C. | POWER SUPPLY & ENGINEERING | Purchase order #C1671 |
| 352. Deltak, L.L.C. | POWER SUPPLY & ENGINEERING | Purchase order #C1424 |
| 353. Deltak, L.L.C. | POWER SUPPLY & ENGINEERING | Purchase order #D4408 |
| 354. Deltak, L.L.C. | POWERMATION DIVISION | Purchase order #D7343 |
| 355. Deltak, L.L.C. | POWERMATION DIVISION | Purchase order #D8786 |

19

| Debtor | Counterparty | Contract Name/Description |
|--------|--------------|---------------------------|
| 356. Deltak, L.L.C. | POWERMATION DIVISION | Purchase order #E2164 |
| 357. Deltak, L.L.C. | POWERMATION DIVISION | Purchase order #D8544 |
| 358. Deltak, L.L.C. | PUMPS AND SUPPLIES, INC. | Purchase order #D8883 |
| 359. Deltak, L.L.C. | PUSAN/SEAH PIPE AMERICA INC. | Purchase order #D1289 |
| 360. Deltak, L.L.C. | PUSAN/SEAH PIPE AMERICA INC. | Purchase order #D6269 |
| 361. Deltak, L.L.C. | QISHUYAN LOCOMOTIVE | Purchase order #G10029 |
| 362. Deltak, L.L.C. | QISHUYAN LOCOMOTIVE | Purchase order #D8149 |
| 363. Deltak, L.L.C. | QISHUYAN LOCOMOTIVE | Purchase order #D7482 |
| 364. Deltak, L.L.C. | QISHUYAN LOCOMOTIVE | Purchase order #D8625 |
| 365. Deltak, L.L.C. | QUALICO STEEL CO. INC. | Purchase order #C2780 |
| 366. Deltak, L.L.C. | QUEST ENGINEERING | Purchase order #C2960 |
| 367. Deltak, L.L.C. | QUEST ENGINEERING | Purchase order #C7126 |
| 368. Deltak, L.L.C. | QUEST ENGINEERING | Purchase order #C2972 |
| 369. Deltak, L.L.C. | QUEST ENGINEERING | Purchase order #C3203 |
| 370. Deltak, L.L.C. | R & V ENGINEERING B.V. | Purchase order #E2089 |
| 371. Deltak, L.L.C. | R.T. ZUMPFE ENGINEERING, INC. | Purchase order #D4601 |
| 372. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8714 |
| 373. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7271 |
| 374. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7270 |

| Debtor | Counterparty | Contract Name/Description |
|--------|--------------|---------------------------|
| 375. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0681 |
| 376. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8520 |
| 377. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9700 |
| 378. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1974 |
| 379. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2416 |
| 380. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2613 |
| 381. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1974 |
| 382. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1970 |
| 383. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7319 |
| 384. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2416 |
| 385. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1551 |
| 386. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2404 |
| 387. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9514 |
| 388. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9531 |
| 389. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9700 |
| 390. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0655 |
| 391. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E3524 |
| 392. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0681 |
| 393. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8710 |

| | Debtor | Counterparty | Contract Name/Description |
|---|---|---|---|
| 394. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0046 |
| 395. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D4669 |
| 396. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D4783 |
| 397. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5028 |
| 398. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7270 |
| 399. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7271 |
| 400. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7503 |
| 401. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7505 |
| 402. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8161 |
| 403. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8714 |
| 404. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9112 |
| 405. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9700 |
| 406. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8520 |
| 407. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6945 |
| 408. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8513 |
| 409. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8374 |
| 410. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8161 |
| 411. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7519 |
| 412. | Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7509 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 413. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7271 |
| 414. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6944 |
| 415. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6922 |
| 416. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6921 |
| 417. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6740 |
| 418. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6739 |
| 419. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6718 |
| 420. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7319 |
| 421. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5621 |
| 422. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8358 |
| 423. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D3826 |
| 424. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5047 |
| 425. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D4780 |
| 426. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5045 |
| 427. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #C5561 |
| 428. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5536 |
| 429. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6012 |
| 430. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5628 |
| 431. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5719 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 432. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5924 |
| 433. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6007 |
| 434. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6718 |
| 435. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D5299 |
| 436. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6282 |
| 437. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6267 |
| 438. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6566 |
| 439. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6380 |
| 440. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6377 |
| 441. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6376 |
| 442. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D3703 |
| 443. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6360 |
| 444. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D7834 |
| 445. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6274 |
| 446. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6272 |
| 447. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6271 |
| 448. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6266 |
| 449. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6150 |
| 450. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6013 |

24

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 451. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6365 |
| 452. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0686 |
| 453. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9531 |
| 454. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1987 |
| 455. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0905 |
| 456. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0684 |
| 457. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0681 |
| 458. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0657 |
| 459. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0650 |
| 460. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9700 |
| 461. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9539 |
| 462. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1525 |
| 463. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D6164 |
| 464. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8879 |
| 465. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0683 |
| 466. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0888 |
| 467. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1525 |
| 468. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1533 |
| 469. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2907 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 470. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E3523 |
| 471. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E3524 |
| 472. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0890 |
| 473. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9522 |
| 474. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8758 |
| 475. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2823 |
| 476. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2395 |
| 477. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1525 |
| 478. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8156 |
| 479. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8027 |
| 480. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8972 |
| 481. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2438 |
| 482. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1584 |
| 483. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0255 |
| 484. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8904 |
| 485. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8012 |
| 486. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E1266 |
| 487. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9336 |
| 488. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9514 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 489. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2433 |
| 490. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9531 |
| 491. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D8522 |
| 492. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2899 |
| 493. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9700 |
| 494. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0897 |
| 495. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0650 |
| 496. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E2710 |
| 497. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #E0655 |
| 498. Deltak, L.L.C. | RADNOR ALLOYS INC. | Purchase order #D9301 |
| 499. Deltak, L.L.C. | REDMOND HEAVY HAUL | Purchase order #T04407 |
| 500. Deltak, L.L.C. | REDMOND HEAVY HAUL | Purchase order #T04440 |
| 501. Deltak, L.L.C. | REPUBLIC BLOWER SYSTEMS | Purchase order #E3315 |
| 502. Deltak, L.L.C. | RICKMERS-LINIE | Purchase order #T04189 |
| 503. Deltak, L.L.C. | RICKMERS-LINIE | Purchase order #T04188 |
| 504. Deltak, L.L.C. | RICKMERS-LINIE | Purchase order #T04190 |
| 505. Deltak, L.L.C. | RICKMERS-LINIE | Purchase order #T04532 |
| 506. Deltak, L.L.C. | RICKMERS-LINIE | Purchase order #T04175 |

27

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 507. Deltak, L.L.C. | RICKMERS-LINIE | Purchase order #T04457 |
| 508. Deltak, L.L.C. | ROCHESTER GAUGE | Purchase order #D4411 |
| 509. Deltak, L.L.C. | ROCKET CRANE | Purchase order #T01950 |
| 510. Deltak, L.L.C. | ROSEMOUNT INC. | Purchase order #E3291 |
| 511. Deltak, L.L.C. | SAM HWA CHEMICAL COMPANY | Purchase order #E2258 |
| 512. Deltak, L.L.C. | SAMSHIN STAINLESS CO.,LIMITED | Purchase order #C1088 |
| 513. Deltak, L.L.C. | SAMSHIN STAINLESS CO.,LIMITED | Purchase order #C1084 |
| 514. Deltak, L.L.C. | SAMSHIN STAINLESS CO.,LTD | Purchase order #D1375 |
| 515. Deltak, L.L.C. | SAMSHIN STAINLESS CO.,LTD | Purchase order #D2735 |
| 516. Deltak, L.L.C. | SAMSHIN STAINLESS CO.,LTD | Purchase order #D8327 |
| 517. Deltak, L.L.C. | SAMYOUNG HEAT EXCH. CO., INC. | Purchase order #D6361 |
| 518. Deltak, L.L.C. | SAMYOUNG HEAT EXCH. CO., INC. | Purchase order #D6891 |
| 519. Deltak, L.L.C. | SAMYOUNG HEAT EXCH. CO., INC. | Purchase order #D1773 |
| 520. Deltak, L.L.C. | SAMYOUNG HEAT EXCH. CO., INC. | Purchase order #C7405 |
| 521. Deltak, L.L.C. | SAMYOUNG HEAT EXCH. CO., INC. | Purchase order #C7240 |
| 522. Deltak, L.L.C. | SAMYOUNG HEAT EXCH. CO., INC. | Purchase order #C0292 |
| 523. Deltak, L.L.C. | SAMYOUNG HEAT EXCH. CO., INC. | Purchase order #B9309 |
| 524. Deltak, L.L.C. | SAND SPRINGS RAILWAY CO | Purchase order #T02474 |
| 525. Deltak, L.L.C. | SAND SPRINGS RAILWAY CO | Purchase order #T02398 |

28

| Debtor | Counterparty | Contract Name, Description |
|---|---|---|
| 526. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T01425 |
| 527. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T01917 |
| 528. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T04665 |
| 529. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T03768 |
| 530. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T03769 |
| 531. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T03767 |
| 532. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T03771 |
| 533. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T01447 |
| 534. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T01961 |
| 535. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T01574 |
| 536. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T02431 |
| 537. Deltak, L.L.C. | SCHENKERS INT'L FORWARDERS | Purchase order #T02532 |
| 538. Deltak, L.L.C. | SEAH PIPE AMERICA INC. | Purchase order #D7926 |
| 539. Deltak, L.L.C. | SEAL-PAC PROFESSIONAL SERVICES | Purchase order #E1858 |
| 540. Deltak, L.L.C. | SENTRY EQUIPMENT CORP. | Purchase order #D8641 |
| 541. Deltak, L.L.C. | SHANGHAI GUANGDIAN ELECTRIC CO | Purchase order #G10776 |
| 542. Deltak, L.L.C. | SHANGHAI SHENGUANG | Purchase order #G10392 |
| 543. Deltak, L.L.C. | SHANGHAI YIYING CRAME MACHINER | Purchase order #G10269 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 544. Deltak, L.L.C. | SHARROW & COMPANY, INC, C.C. | Purchase order #E2343 |
| 545. Deltak, L.L.C. | SHARROW & COMPANY, INC, C.C. | Purchase order #E1701 |
| 546. Deltak, L.L.C. | SHARROW & COMPANY, INC, C.C. | Purchase order #C4811 |
| 547. Deltak, L.L.C. | SHENZHENG ZHONGJIN HUAYANG | Purchase order #G10183 |
| 548. Deltak, L.L.C. | SIERRA INSTRUMENTS, INC. | Purchase order #E3287 |
| 549. Deltak, L.L.C. | SIERRA INSTRUMENTS, INC. | Purchase order #C1662 |
| 550. Deltak, L.L.C. | SMITH MACHINE & WELDING CO., | Purchase order #D8824 |
| 551. Deltak, L.L.C. | SMITH'S MACHINE & WELDING CO., | Purchase order #E0379 |
| 552. Deltak, L.L.C. | SPRAYING SYSTEMS | Purchase order #E1744 |
| 553. Deltak, L.L.C. | SPRAYING SYSTEMS | Purchase order #E1881 |
| 554. Deltak, L.L.C. | SPRAYING SYSTEMS | Purchase order #E0867 |
| 555. Deltak, L.L.C. | SPRAYING SYSTEMS | Purchase order #E1904 |
| 556. Deltak, L.L.C. | ST. PAUL STAMP WORKS, INC. | Purchase order #E0703 |
| 557. Deltak, L.L.C. | ST. PAUL STAMP WORKS, INC. | Purchase order #D9144 |
| 558. Deltak, L.L.C. | ST. PAUL STAMP WORKS, INC. | Purchase order #D4299 |
| 559. Deltak, L.L.C. | STEEL & PIPE SUPPLY CO., INC. | Purchase order #C5780 |
| 560. Deltak, L.L.C. | STEEL & PIPE SUPPLY CO., INC. | Purchase order #C4660 |
| 561. Deltak, L.L.C. | STRAUB METAL | Purchase order #E3479 |
| 562. Deltak, L.L.C. | SULZER PUMPS (US) INC. | Purchase order #D0883 |

30

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 563. Deltak, L.L.C. | SULZER PUMPS (US) INC. | Purchase order #D6810 |
| 564. Deltak, L.L.C. | SUPPLY SOLUTIONS OF TEXAS | Purchase order #D6923 |
| 565. Deltak, L.L.C. | SWANSON FLO-SYSTEMS COMPANY | Purchase order #E3286 |
| 566. Deltak, L.L.C. | SWANSON FLO-SYSTEMS COMPANY | Purchase order #E3297 |
| 567. Deltak, L.L.C. | TEAM INDUSTRIES, INC. | Purchase order #D7031 |
| 568. Deltak, L.L.C. | TECHNICAL INDUSTRIAL SALES | Purchase order #E3628 |
| 569. Deltak, L.L.C. | TEKTUBE DIVISION | Purchase order #E3262 |
| 570. Deltak, L.L.C. | TEMATI B.V. | Purchase order #E2500 |
| 571. Deltak, L.L.C. | THERMO-COUPLE PRODUCTS | Purchase order #D9886 |
| 572. Deltak, L.L.C. | THERMO-COUPLE PRODUCTS | Purchase order #D9061 |
| 573. Deltak, L.L.C. | THERMO-COUPLE PRODUCTS | Purchase order #D8559 |
| 574. Deltak, L.L.C. | THERMO-COUPLE PRODUCTS | Purchase order #D6492 |
| 575. Deltak, L.L.C. | THOMPSON LIGHTNING PROTECTION | Purchase order #D9863 |
| 576. Deltak, L.L.C. | TIANJIN ELECTRIC CONST. CO. | Purchase order #G10141 |
| 577. Deltak, L.L.C. | TNT INCORPORATED | Purchase order #C4235 |
| 578. Deltak, L.L.C. | TOTAL EXPORT | Purchase order #T04247 |
| 579. Deltak, L.L.C. | TRENERGY INC. | Purchase order #E1465 |
| 580. Deltak, L.L.C. | TRENT TUBE DIVISION | Purchase order #D0316 |
| 581. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T03272 |

31

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 582. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T03453 |
| 583. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T02065 |
| 584. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T01986 |
| 585. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T01973 |
| 586. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T01952 |
| 587. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T03463 |
| 588. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T01903 |
| 589. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T02309 |
| 590. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T03312 |
| 591. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T02572 |
| 592. Deltak, L.L.C. | TRUCKERS EXPRESS | Purchase order #T02490 |
| 593. Deltak, L.L.C. | TRX | Purchase order #T03855 |
| 594. Deltak, L.L.C. | TULSA FIN TUBE | Purchase order #E2822 |
| 595. Deltak, L.L.C. | TWIN CITY HOSE | Purchase order #E0853 |
| 596. Deltak, L.L.C. | TWIN CITY HOSE | Purchase order #E1633 |
| 597. Deltak, L.L.C. | TWIN CITY HOSE | Purchase order #E0853 |
| 598. Deltak, L.L.C. | TWIN CITY TESTING CORPORATION | Purchase order #E3401 |
| 599. Deltak, L.L.C. | TWIN CITY TESTING CORPORATION | Purchase order #E0858 |

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 600. Deltak, L.L.C. | TWIN CITY TESTING CORPORATION | Purchase order #E2040 |
| 601. Deltak, L.L.C. | TWIN CITY TESTING CORPORATION | Purchase order #E3621 |
| 602. Deltak, L.L.C. | TWIN CITY TESTING CORPORATION | Purchase order #E2378 |
| 603. Deltak, L.L.C. | TWIN CITY TESTING CORPORATION | Purchase order #E2876 |
| 604. Deltak, L.L.C. | UNAFLEX INCORPORATED | Purchase order #E3325 |
| 605. Deltak, L.L.C. | UNAFLEX INCORPORATED | Purchase order #C5037 |
| 606. Deltak, L.L.C. | UNAFLEX INCORPORATED | Purchase order #D2322 |
| 607. Deltak, L.L.C. | UNAFLEX INCORPORATED | Purchase order #D4331 |
| 608. Deltak, L.L.C. | UNAFLEX INCORPORATED | Purchase order #E2465 |
| 609. Deltak, L.L.C. | UNITED STEEL FABRICATORS | Purchase order #C4234 |
| 610. Deltak, L.L.C. | UNITED STEEL STRUCTURES LTD | Purchase order #E1861 |
| 611. Deltak, L.L.C. | UNITED STEEL STRUCTURES LTD | Purchase order #E3977 |
| 612. Deltak, L.L.C. | V & M TUBES CORPORATION - USA | Purchase order #E0821 |
| 613. Deltak, L.L.C. | V & M TUBES CORPORATION - USA | Purchase order #D8459 |
| 614. Deltak, L.L.C. | V & M TUBES CORPORATION - USA | Purchase order #D7924 |
| 615. Deltak, L.L.C. | V & M TUBES CORPORATION - USA | Purchase order #B9010 |
| 616. Deltak, L.L.C. | V & M TUBES CORPORATION - USA | Purchase order #B8998 |
| 617. Deltak, L.L.C. | VAN BERGEN & MARKSON, INC. | Purchase order #D3739 |
| 618. Deltak, L.L.C. | VESSEL TECHNOLOGY | Purchase order #C1142 |

33

| | Debtor | Counterparty | Contract Name/Description |
|---|---|---|---|
| 619. | Deltak, L.L.C. | VICOMA B.V. | Purchase order #D8076 |
| 620. | Deltak, L.L.C. | WAGNER PLATE WORKS | Purchase order #E3226 |
| 621. | Deltak, L.L.C. | WATERS EQUIPMENT | Purchase order #E2672 |
| 622. | Deltak, L.L.C. | WATERS EQUIPMENT | Purchase order #E0911 |
| 623. | Deltak, L.L.C. | WATERS EQUIPMENT | Purchase order #D4520 |
| 624. | Deltak, L.L.C. | WAYRON METAL FABRICATORS | Purchase order #D9933 |
| 625. | Deltak, L.L.C. | WEATHERFORD PIPELINE & | Purchase order #E1126 |
| 626. | Deltak, L.L.C. | WEIR VALVES&CONTROLS / ATWOOD | Purchase order #D1874 |
| 627. | Deltak, L.L.C. | WEIR VALVES&CONTROLS / ATWOOD | Purchase order #D7211 |
| 628. | Deltak, L.L.C. | WEST CENTRAL, STEEL,INC. | Purchase order #E3409 |
| 629. | Deltak, L.L.C. | WEST CENTRAL, STEEL,INC. | Purchase order #E3471 |
| 630. | Deltak, L.L.C. | WHEELER TANK MFG, INC | Purchase order #D8835 |
| 631. | Deltak, L.L.C. | WHEELER TANK MFG, INC | Purchase order #C1856 |
| 632. | Deltak, L.L.C. | WHEELER TANK MFG, INC | Purchase order #E2107 |
| 633. | Deltak, L.L.C. | WHEELER TANK MFG, INC | Purchase order #D4434 |
| 634. | Deltak, L.L.C. | WHEELER TANK MFG, INC | Purchase order #E2106 |
| 635. | Deltak, L.L.C. | WILLIAMS INDUSTRIAL SVC. LLC | Purchase order #E2585 |
| 636. | Deltak, L.L.C. | WILLICH P.T. ISOLASI PRATAMA | Purchase order #D5041 |
| 637. | Deltak, L.L.C. | WILLICH P.T. ISOLASI PRATAMA | Purchase order #D1580 |

34

| Debtor | Counterparty | Contract Name/Description |
|---|---|---|
| 638. Deltak, L.L.C. | WILLICH P.T. ISOLASI PRATAMA | Purchase order #D1556 |
| 639. Deltak, L.L.C. | WILLICH P.T. ISOLASI PRATAMA | Purchase order #D2286 |
| 640. Deltak, L.L.C. | WILLICH P.T. ISOLASI PRATAMA | Purchase order #D5043 |
| 641. Deltak, L.L.C. | WILLICH P.T. ISOLASI PRATAMA | Purchase order #D5042 |
| 642. Deltak, L.L.C. | WILLICH P.T. ISOLASI PRATAMA | Purchase order #D7242 |
| 643. Deltak, L.L.C. | WILLICH P.T. ISOLASI PRATAMA | Purchase order #D6734 |
| 644. Deltak, L.L.C. | WOLVERINE BOILER TUBE | Purchase order #D8476 |
| 645. Deltak, L.L.C. | WORLD TRANSLOAD & LOGISTICS | Purchase order #C5783 |
| 646. Deltak, L.L.C. | WYATT ENGR LLC C/O SWANSON-FLO | Purchase order #D1880 |
| 647. Deltak, L.L.C. | WYATT ENGR LLC C/O SWANSON-FLO | Purchase order #D2375 |
| 648. Deltak, L.L.C. | YARWAY | Purchase order #C0844 |
| 649. Deltak, L.L.C. | YARWAY TYCO VALVES & CONTROLS | Purchase order #D2033 |
| 650. Deltak, L.L.C. | YARWAY TYCO VALVES & CONTROLS | Purchase order #D9357 |
| 651. Deltak, L.L.C. | ZHEJIANG BUREAU OF Q & T SUPER | Purchase order #G10442 |
| 652. Deltak, L.L.C. | ZUMPFE ENGINEERING INC., R.T. | Purchase order #D7406 |

35

Exhibit B

## SCHEDULE OF ASSUMED AND ASSUMED AND ASSIGNED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| | Debtor | Counterparty | Contract Name/Description | Cure Amount (U.S. Dollars) |
|---|---|---|---|---|
| 1. | Braden Manufacturing, L.L.C. | FINAL TOUCH CLEANING | Cleaning Contract | 2,900.00 |
| 2. | Braden Manufacturing, L.L.C. | MCI | Contract 331806-01; Integrated Internet/Voice T-1 Service | 1,214.69 |
| 3. | Braden Manufacturing, L.L.C. | UNIFIRST CORPORATION | Customer Assurance Agreement | 4,211.24 |
| 4. | Braden Manufacturing, L.L.C. | WACKENHUT CORPORATION | Wackenhut offered guard service | 8,544.03 |
| 5. | Braden Manufacturing, L.L.C. | PITNEY BOWES CREDIT CORP. | Lessee Number: 1990606-003; Lease Agreement for Mailing System | 1,168.73 |
| 6. | Braden Manufacturing, L.L.C. | CONVERSENT COMMUNICATIONS LLC | Internet Services Telecommunication Service Agreement | 998.11 |
| 7. | Braden Manufacturing, L.L.C. | IKON FINANCIAL SERVICES | Product Schedule Number: 50000440A8 Master Agreement Number: 5000440 | 6,538.83 |
| 8. | Braden Manufacturing, L.L.C. | XCEL ENERGY | Maintenance, repair and operation services agreement | 0.00 |
| 9. | Braden Manufacturing, L.L.C. | MARTIN LEASING CORPORATION | Equipment lease for 1650 and 2050 copiers for CFI | $154.28 |
| 10. | Braden Manufacturing, L.L.C. | MARTIN LEASING CORPORATION | Equipment Lease for Kyocera 4035 copier | $278.10 |
| 11. | Braden Manufacturing, L.L.C. | TRANSPORTATION LEASING CO | 2000 Dodge Grand Caravan - White | $519.00 |
| 12. | Braden Manufacturing, L.L.C. | TOSHIBA AMERICA INFORMATION SY | Copier Lease Agreement with Maintenance | $2,855.84 |
| 13. | Braden Manufacturing, L.L.C. | PITNEY BOWES | Pitney Bowes Credit Corporation Smart Business Lease | $201.20 |

| Debtor | Counterparty | Contract Name/Description | Cure Amount (U.S. Dollars) |
|---|---|---|---|
| 14. Braden Manufacturing, L.L.C. | COX COMMUNICATIONS | Optical Internet - Transparent LAN Service | $2,007.72 |
| 15. Braden Manufacturing, L.L.C. | COX COMMUNICATIONS, INC | Transparent LAN Service | $1,455.63 |
| 16. Braden Manufacturing, L.L.C. | GE CAPITAL | Copier Lease Agreement | $613.20 |
| 17. Global Power Equipment Group Inc. | ADP, INC. | Full Service Direct Deposit, ADPCheck, TotalPay Card and InstantPay Card, Time and Labor Management, ADP Benefits Expert, ADP Portal Solution, Web Hosting Services, | 393.72 |
| 18. Global Power Equipment Group Inc. | CONSERTO, LLC | Voice Conferencing Sales Agreement | 3,660.12 |
| 19. Global Power Equipment Group Inc. | FEDERAL EXPRESS | Fed Ex Pricing Agreement with Global Power | 164.37 |
| 20. Global Power Equipment Group Inc. | HALL ESTILL ATTORNEY AT LAW | Hall Estill Engagement Agreement | 6,249.00 |
| 21. Global Power Equipment Group Inc. | MADE2MANAGE SYSTEMS, INC. | Acceptance of Agreement | 205,744.42 |
| 22. Global Power Equipment Group Inc. | MCNAIR LAW FIRM, P.A. | McNair Engagement Letter | 1,920.20 |
| 23. Global Power Equipment Group Inc. | SECUREWORKS, INC | Equipment and service equipment | 51,787.50 |
| 24. Global Power Equipment Group Inc. | STINNETT & ASSOCIATES, LLC | IT Project Management & SOX projects personnel services contract | 396,698.37 |
| 25. Global Power Equipment Group Inc. | TROPICAL PLANT DESIGN, INC. | Guaranteed Maintenance Agreement | 286.35 |
| 26. Global Power Equipment Group Inc. | WEBEX COMMUNICATIONS, INC. | Video Conferencing | 1,500.00 |
| 27. Global Power Equipment Group Inc. | AT&T CORP. | AT&T Master Agreement MA Reference No. 120588 | 484.39 |
| 28. Deltak, L.L.C. | GENERAL ELECTRIC COMPANY | GO3003 (GE Caojing) HRSG Contract | 0.00 |

2

| | Debtor | Counterparty | Contract Name/Description | Cure Amount (U.S. Dollars) |
|---|---|---|---|---|
| 29. | Deltak, L.L.C. | GENERAL ELECTRIC COMPANY | GO4408 (GE Tamazunchale) HRSG Contract | 0.00 |
| 30. | Deltak, L.L.C. | PITNEY BOWES | Sales Agreement & Equipment Maintenance Agreement | 1,064.24 |
| 31. | Deltak, L.L.C. | TIME WARNER TELECOM INC. | Internet Access Addendum | 3,333.71 |
| 32. | Deltak, L.L.C. | WEBEX COMMUNICATIONS INC. | Webconferencing service | 3,900.00 |
| 33. | Deltak, L.L.C. | AMB PROPERTY L.P. | Plymouth, MN facility lease | 22,658.45 |
| 34. | Deltak, L.L.C. | NELS INC. | HRSG related vendor purchase order #D8008 | 0.00 |
| 35. | Deltak, L.L.C. | RICOH CORPORATION | Customer Care Service Contract | 1,060.24 |
| 36. | Deltak, L.L.C. | CULLIGAN BOTTLED WATER | Water Coolers Contract | 172.21 |
| 37. | Deltak, L.L.C. | LOFFLER COMPANIES, INC. | Copier Lease: Canon ImageRunner 4570 | 515.46 |
| 38. | Williams Industrial Services Group, LLC | FORD CREDIT COMMERCIAL LEASING | Commercial Lease Master Lease Agreement (TRAC) | 264.65 |
| 39. | Williams Industrial Services Group, LLC | SUPERIOR DOCUMENT SOLUTIONS | Konica Minolta Bizhub Pro C500 System | 747.67 |
| 40. | Williams Industrial Services Group, LLC | BELLSOUTH TELECOMMUNICATIONS, INC. | Office Telephone Line Provider | 1,129.50 |
| 41. | Williams Industrial Services Group, LLC | BELL SOUTH LONG DISTANCE | Office Telephone Line Provider | 4,155.63 |
| 42. | Williams Plant Services, LLC | GE CAPITAL | Copier Lease agreement | 198.34 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

## APPEAL TRANSMITTAL SHEET

Case Number: ___06-11045_____ ●BK ○AP

    If AP, related BK Case Number: _____

Title of Order Appealed:

See attachment

      Docket Number: _2233____      Date Entered: _12/21/07_____

Item Transmitted:   ● Notice of Appeal      ○ Motion for Leave to Appeal
               ○ Amended Notice of Appeal   ○ Cross Appeal
               Docket Number: _2240____    Date Filed: _12/27/07_____

*Appellant/Cross Appellant:         *Appellee/Cross Appellee
_SNC-Lavalin Power Ontario, Inc._     see attachment

Counsel for Appellant:           Counsel for Appellee:

_William D. Sullivan_____   see attachment
_Elihu E. Allinson, III_____
_William D. Sullivan, LLC_____
_4 East 8th Street, Suite 400_____
_Wilmington, DE 19801 (302) 428-8191_

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?  ● Yes  ○ No

IFP Motion Filed by Appellant?  ○ Yes  ● No

Have Additional Appeals to the Same Order been Filed?  ○ Yes  ● No

    If so, has District Court assigned a Civil Action Number?  ○ Yes  ○ No  Civil Action # _____

Additional Notes:

_Appellee's Designation has not been filed_____

_1/11/08_____          By: _M. Lopez_____
Date                           Deputy Clerk

                                   FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: _07-108_____
7/6/06

**Attachment**

**Title of Order Appealed:**

Order Confirming the First Amended Joint Chapter 11 Plan of Reorganization for Global Power Equipment Group Inc. and Its Affiliated Debtors

**Appellee/Cross Appellee:**
Global Power Equipment Group, Inc, et al.

**Counsel for Appellee:**

| White & Case LLP | and | Jeffrey M. Schlerf |
| John K. Cunningham | | Eric M. Sutty |
| Frank L. Eaton | | Mary E. Augustine |
| Matthew C. Brown | | The Bayard Firm |
| Wachovia Financial Center | | 222 Delaware Avenue, Suite 900 |
| 200 South Biscayne Boulevard, 49th Floor | | Wilmington, DE 19801 |
| Miami, FL 33131 | | (302) 655-5000 |
| (305) 379-2700 | | |

**Appellee/Cross Appellee:**
Official Committee of Unsecured Creditors

**Counsel for Appellee:**

| Jeffrey S. Sabin | and | Adam G. Landis |
| David M. Hillman | | John H. Strock |
| Schulte Roth & Zabel LLP | | Landis Rath & Cobb LLP |
| 919 Third Avenue | | 919 Market Street |
| New York, NY 10022 | | Suite 600 |
| (212) 756-2000 | | Wilmington, DE 19801 |
| | | (302) 467-4400 |

**Appellee/Cross Appellee:**
Official Committee of Equity Security Holders

**Counsel for Appellee:**

| Steven D. Pohl | and | Howard L. Siegel |
| Brown Rudnick Berlack Israels LLP | | Brown Rudnick Berlack Israels LLP |
| One Financial Center | | City Place 1 |
| Boston, MA 02111 | | 185 Asylum Street |
| (617) 856-8200 | | Hartford, CT 06103 |

Mark Minuti
Saul Ewing LLP
222 Delaware Avenue, Suite 1200

P.O. Box 1266
Wilmington, DE  19899
(302) 421-6800


**Appellee/Cross Appellee:**
Noteholders

**Counsel for Appellee:**

| Robin E. Keller, Esq. | and | Mark E. Felger, Esq. |
| --- | --- | --- |
| Lovells LLP | | Cozen O'Connor |
| 590 Madison Avenue | | 1201 North Market Street, Suite 1400 |
| New York, NY  10022 | | Wilmington, DE  19801 |
| (212) 909-0600 | | (302)  295-2087 |