IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| GLOBAL POWER EQUIPMENT GROUP INC., et al., | ) Case No. 06-11045 (BLS) |
| | ) |
| | ) Jointly Administered |
| | ) |
| SNC-LAVALIN POWER ONTARIO, INC., | ) |
| | ) |
| Appellant, | ) Case No. 1:08-cv-00025 (JJF) |
| | ) |
| v. | ) |
| | ) |
| GLOBAL POWER EQUIPMENT GROUP INC., et al., | ) |
| | ) |
| Appellees. | ) |

## THE ESTATE REPRESENTATIVES' MOTION TO DISMISS THE APPEAL OF SNC-LAVALIN POWER ONTARIO, INC. OF THE BANKRUPTCY COURT'S CONFIRMATION ORDER DATED DECEMBER 21, 2007

Global Power Equipment Group Inc. and its affiliated debtors as reorganized (collectively, the "Debtors" or "New GPEG Entities"), together with the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the Official Committee of Equity Security Holders (the "Equity Committee" and, together with the Creditors' Committee and the Debtors, the "Estate Representatives") file this motion (the "Motion") pursuant to Rule 8011 of the Federal Rules of Bankruptcy Procedure to dismiss the appeal (the "Appeal") by SNC-Lavalin Power Ontario, Inc. of the order dated December 21, 2007 (the "Confirmation Order") of the United States Bankruptcy Court for the District of Delaware in the Debtors' jointly administered chapter 11 cases confirming the First Amended Joint Chapter 11 Plan of Reorganization for Global Power

MIAMI 766768 v1 (2K)

Equipment Group, Inc. and Its Affiliated Debtors. In support of this Motion, the Estate Representatives rely upon the Memorandum of Law in Support of the Motion (the "Memorandum of Law") and the Declaration of Candice Cheeseman in Support of the Motion (the "Cheeseman Declaration") filed contemporaneously herewith.

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Law and Cheeseman Declaration, the Estate Representatives request that the Court enter an order, in the form annexed hereto, (i) granting the Motion, (ii) dismissing the Appeal and (iii) granting such other relief as may be appropriate.

Dated: Wilmington, Delaware
       February 25, 2008

BAYARD, P.A.

By: _____
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
Mary E. Augustine (No. 4477)
Kathryn D. Sallie (No. 4600)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

-and-

John K. Cunningham
Frank L. Eaton
Matthew C. Brown
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Boulevard, 49th Floor
Miami, Florida 33131
(305) 371-2700

Attorneys for the Debtors and the New GPEG Entities

Adam G. Landis, Esquire
Kerri K. Mumford, Esquire
LANDIS RATH & COBB LLP
919 Market Street, Suite 600
Wilmington, DE 19801

- and -

Jeffrey S. Sabin, Esquire
David M. Hillman, Esquire
Brian Kohn, Esquire
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Attorneys for the Official Committee of
Unsecured Creditors


Mark Minuti, Esquire
Jeremy W. Ryan, Esquire
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801

- and -

Howard L. Siegel, Esquire
Stephen Pohl, Esquire
BROWN RUDNICK BERLACK ISRAELS LLP
CityPlace
185 Asylum Street
Hartford, CT 06103-3402

Attorneys for the Official Committee of
Equity Security Holders

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>GLOBAL POWER EQUIPMENT GROUP INC., et al., | Chapter 11<br><br>Case No. 06-11045 (BLS)<br><br>Jointly Administered |
| SNC-LAVALIN POWER ONTARIO, INC.,<br><br>Appellant,<br><br>v.<br><br>GLOBAL POWER EQUIPMENT GROUP INC., et al.,<br><br>Appellees. | Case No. 1:08-cv-00025 (JJF) |

**DECLARATION OF CANDICE CHEESEMAN IN SUPPORT OF THE ESTATE REPRESENTATIVES' MOTION TO DISMISS APPEAL OF SNC-LAVALIN POWER ONTARIO, INC. OF THE BANKRUPTCY COURT'S CONFIRMATION ORDER DATED DECEMBER 21, 2007**

STATE OF OKLAHOMA   )
                    ) ss:
COUNTY OF TULSA     )

I, Candice Cheeseman, hereby declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge and belief:

1. I submit this declaration in support of the motion (the "Motion") of Global Power Equipment Group Inc. ("GPEG" and, as reorganized, "New GPEG") and its affiliated debtors as reorganized (collectively, the "Debtors" or "New GPEG Entities"), together with the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the Official Committee of Equity Security Holders (the "Equity

A. **The Plan**

4. The Plan represents the culmination of months of intensive negotiations between the Debtors and the major constituencies in their chapter 11 cases, including the Creditors' Committee and the Equity Committee (collectively, the "Committees"), and the holders of 100% of GPEG's 4.25% Convertible Senior Subordinated Notes (the "Noteholders"). The Plan provides for payment in full plus interest to all creditors other than those holding Deltak Class 5 – Unsecured Claims against debtor Deltak, L.L.C. ("Deltak"). As described below, the Plan is premised upon a number of key components.

5. First, on October 30, 2007, the Debtors, the Committees and the Noteholders entered into an agreement approved by the Bankruptcy Court (the "Plan Support Agreement"), pursuant to which the Committees and the Noteholders agreed to support a plan of reorganization proposed by the Debtors that contemplated, among other things, a rights offering.

6. Second, the Debtors, the Equity Committee and the Noteholders entered into an agreement approved by the Bankruptcy Court (the "Noteholder Settlement"), pursuant to which the Noteholders agreed to settle their claims (collectively, the "Noteholder Claims") against the Debtors – allegedly in excess of $96 million – in exchange for, among other things, the allowance of the Noteholder Claims in the aggregate amount of $89.7 million and a cash payment of $86 million on account of the allowed claims on the effective date of the Plan (the "Effective Date"), plus accrued interest if the Effective Date did not occur by December 31, 2007.

7. Third, certain holders of GPEG's common stock (the "Backstop Investors") entered into that certain securities purchase agreement approved by the

3

Bankruptcy Court (the "Backstop Stock Purchase Agreement"), pursuant to which they agreed to fully backstop (i) a rights offering (the "Rights Offering") of New GPEG's common stock, par value $0.01 per share (the "New GPEG Common Stock"), pursuant to which existing equity holders would receive a right to purchase shares of New GPEG Common Stock in accordance with section 1145 of title 11 of the United States Code (the "Bankruptcy Code") and (ii) a private placement (the "Private Placement") of shares of New GPEG Common Stock pursuant to which certain equity holders who were "accredited investors" would receive the right to purchase shares of New GPEG Common Stock in accordance with an exemption from registration under applicable securities laws.

8. Fourth, the Debtors proposed a settlement under the Plan to fully resolve numerous issues in controversy with respect to Deltak, including the appropriate treatment of certain GPEG/Deltak intercompany balances (the "Deltak Settlement"). As a consequence of Deltak Class 5 creditors voting in favor of the Plan, pursuant to the terms of the Deltak Settlement, holders of allowed Deltak Class 5 – Unsecured Claims will receive their pro rata share of a $34,000,000 cash distribution under the Plan (the "Deltak Settlement Amount"), as well as their pro rata share of certain avoidance action recoveries, warranty recoveries and indemnity recoveries (collectively with the Deltak Settlement Amount, the "Deltak Plan Assets"), with all such distributions to be administered by the Deltak Plan Administrator. The New GPEG Entities believe that the Deltak Settlement Amount may be sufficient to pay all of the Deltak Class 5 – Unsecured Claims in full.

9. Finally, the Debtors entered into a credit facility authorized by the Plan and the Bankruptcy Court (the "Exit Facility") with certain existing postpetition

4

debtor-in-possession lenders (the "Exit Lenders") pursuant to which they obtained $150 million in exit financing (the "Exit Financing") on the Effective Date. The Exit Facility consists of: (a) a $60,000,000 revolving letter of credit facility, including a $10,000,000 cash advance subfacility, and (b) a $90,000,000 term loan. On or after the Effective Date, approximately $64 million of the Exit Financing has been used to pay off the Debtors' borrowings under their debtor-in-possession credit facility (the "DIP Facility").

### B. The Effective Date and Substantial Consummation of the Plan

10. All impaired classes of claims and equity interests voted overwhelmingly to accept the Plan. On December 21, 2007, after conducting an evidentiary hearing, the Bankruptcy Court overruled the SNC Objection in its entirety and entered the Confirmation Order.

On December 27, 2007, SNC filed its notice of appeal of the Confirmation Order. SNC did not seek a stay of the Confirmation Order pending its appeal prior to the Effective Date of the Plan.

### C. The Effective Date and Substantial Consummation of the Plan

11. Under the terms of the Plan Support Agreement, the Noteholder Settlement and the Backstop Stock Purchase Agreement, the Debtors were required to satisfy all conditions precedent to the occurrence of the Effective Date of the Plan within a reasonable period of time following entry of the Confirmation Order, not only to meet the reasonable expectations of creditors and equity holders awaiting their distributions, but also to avoid a number of adverse consequences that could otherwise have been triggered under certain of the Debtors' critical agreements.

12. First, any delay in the occurrence of the Effective Date would have resulted in the continued accrual of postpetition interest on allowed claims (including the

5

accrual of interest on the $86 million Noteholder Claims at a rate of 6.75% commencing on January 1, 2008). As a consequence of finalizing the terms and conditions of the Exit Facility and the occurrence of the Effective Date, the Debtors were required to pay the Noteholders approximately $286,000 in accrued interest. Had the Effective Date not occurred prior to January 31, 2008, the Debtors' exclusive period within which to file a plan of reorganization would have automatically terminated with respect to the Creditors' Committee and the Noteholders under the Plan Support Agreement, thereby allowing such parties to file competing plans of reorganization, and the Noteholders would have been entitled to accrue interest on their allowed claims at a default rate of 9.25% as of January 1, 2008 under the Noteholder Settlement.

13. Additionally, had the Effective Date not occurred prior to January 31, 2008, the Plan Support Agreement would have automatically terminated. In such event, the prolonged stay in chapter 11 and changes in market conditions may have made it difficult if not impossible for the Debtors to renegotiate a consensual plan of reorganization with the Committees and the Noteholders. Finally, the occurrence of the Effective Date on or before January 31, 2008 was a condition precedent to the Exit Lenders' obligations to extend financing under the Exit Facility.

14. Accordingly, on January 22, 2008, the Effective Date occurred after the Debtors had satisfied all conditions precedent to the occurrence of the Effective Date (as set forth in Section 14.2 of the Plan). Specifically, on or about the Effective Date: (i) $71 million in escrowed funds of the equity investors and the Backstop Investors participating in the Rights Offering and Private Placement, plus $1.5 million raised pursuant to an offer of stock to management, were transferred to the Debtors; (ii)

the Exit Facility closed and the Debtors obtained over $150 million in Exit Financing; (iii) the proceeds of the Rights Offering, Private Placement and Exit Financing (after payment of the DIP Facility) were used to immediately fund, in the form of wire transfers as well as over 430 checks, the $34 million Deltak Settlement Amount, the $86.286 million Noteholder Settlement, and over $12 million in additional Plan distributions on account of allowed claims against the Debtors, and various other fees and expenses; and (iv) pursuant to the Rights Offering and Private Placement, 134 million shares of New GPEG Common Stock were distributed following the occurrence of the Effective Date to the participating equity investors, employees and the Backstop Investors, and warrants were issued to the Backstop Investors. Accordingly, the Plan has been substantially consummated.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 25, 2008

> GLOBAL POWER EQUIPMENT GROUP INC.,
> (for itself and on behalf of each of the New GPEG Entities)
>
> By: *[signature]*
> Name: Candice Cheeseman
> Title: Vice President, General Counsel and Secretary

7

MIAMI 768122 (2K)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>GLOBAL POWER EQUIPMENT GROUP INC., et al., | Chapter 11<br><br>Case No. 06-11045 (BLS)<br><br>Jointly Administered |
| SNC-LAVALIN POWER ONTARIO, INC.,<br><br>            Appellant,<br><br>v.<br><br>GLOBAL POWER EQUIPMENT GROUP INC., et al.,<br><br>            Appellees. | Case No. 1:08-cv-00025 (JJF) |

**ORDER GRANTING THE ESTATE REPRESENTATIVES'
MOTION TO DISMISS THE APPEAL OF SNC-LAVALIN
POWER ONTARIO, INC. OF THE BANKRUPTCY COURT'S
<u>CONFIRMATION ORDER DATED DECEMBER 21, 2007</u>**

Upon consideration of (i) the motion (the "Motion") of Global Power Equipment Group Inc. and its affiliated debtors as reorganized (collectively, the "Debtors" or the "New GPEG Entities"), together with the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the Official Committee of Equity Security Holders (the "Equity Committee" and, together with the Creditors' Committee and the Debtors, the "Estate Representatives") pursuant to Rule 8011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to dismiss the appeal by SNC-Lavalin Power Ontario, Inc. (the "Appeal") of the order dated December 21, 2007 (the "Confirmation Order") of the United States Bankruptcy Court for the District of Delaware confirming the First Amended Joint Chapter 11 Plan of Reorganization for

MIAMI 767981 v1 (2K)

Global Power Equipment Group, Inc. and Its Affiliated Debtors (the "Plan"), (ii) the Memorandum of Law in Support of the Motion and (iii) the Declaration of Candice Cheeseman in Support of the Motion; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that the Appeal of the Confirmation Order is dismissed with prejudice.

Dated: Wilmington, Delaware
February __, 2008

By:_____
UNITED STATES DISTRICT JUDGE